UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
FAR EASTERN SHIPPING CO.,

                                        Plaintiff,

          - against -

PROGRESS BULK CARRIERS, LTD.,

                                        Defendant.
------------------------------------------------------------------X

**ECF CASE**

07 Civ. 11375 (PAC)


# MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT PROGRESS BULK CARRIERS, LTD.'s
## MOTION TO VACATE THE RULE B MARITIME ATTACHMENT


Of Counsel:

Kirk M. Lyons
Jon Werner

**Lyons & Flood, LLP**
Attorneys for Defendant
PROGRESS BULK CARRIERS, LTD.
65 W. 36th Street, 7th Floor
New York, NY 10018
(212) 594-2400

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ii

PRELIMINARY STATEMENT......................................................................................... 1

FACTS ................................................................................................................................ 2

ARGUMENT...................................................................................................................... 6

POINT I        PLAINTIFF HAS FAILED TO MEET ITS RULE
               E(4)(f) BURDEN UNDER AQUA STOLI........................................... 6

POINT II       DEFENDANT PBC WAS PRESENT WITHIN THE
               DISTRICT WHEN PLAINTIFF'S VERIFIED
               COMPLAINT WAS FILED ............................................................... 8

        a.     Defendant PBC had an agent for the service of
               process within the District ...................................................... 9

        b.     Defendant PBC was jurisdictionally present
               within the District ................................................................. 11

POINT III      DEFENDANT PBC COULD HAVE BEEN SUED IN
               A CONVENIENT ADJACENT JURISDICTION
               WHEN PLAINTIFF'S VERIFIED COMPLAINT
               WAS FILED ................................................................................. 17

CONCLUSION.................................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76 (2nd Cir. 1993)........................................ 13

Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434 (2nd Cir.
   2006) ................................................................................................................. passim

Blueye Navigation v. Oltenia Navigation, 1995 U.S. Dist. LEXIS 1844
   (S.D.N.Y. 1995)......................................................................................................... 9

D.H. Blair & Co., Inc., v. Gottdiener, 462 F.3d 95 (2nd Cir. 2006) ...'.............................. 16

D/S A/S Flint v. Sabre Shipping Corp., 228 F. Supp. 384 (E.D.N.Y. 1964),
   aff'd on other grounds sub nom., Det Bergenski Dampskibsselskab v.
   Sabre Shipping Corp., 341 F.2d 50 (2nd Cir. 1965) ...................................................... 23

Erne Shipping Inc. v. HBC Hamburg Bulk Carriers GMBH & Co. KG,
   409 F. Supp. 2d 427 (S.D.N.Y. 2006), rejected on other grounds, Aqua
   Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434 (2nd Cir.
   2006) ................................................................................................................. 16, 17

Federazione Italiana Dei Consorzi Agrari v. Mandask Compania De
   Vapores, S.A., 158 F. Supp. 107 (S.D.N.Y. 1957) ................................................. 9, 18

Gelfand v. Tanner Motor Tours, Ltd., 385 F.2d 116 (2nd Cir. 1967) ......................... 19, 20

Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 104 S.
   Ct. 1868, 80 L. Ed. 2d 404 (1984) ............................................................................ 17

Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55 (2nd Cir. 1985)............................ 18

Integrated Container Service, Inc. v. Starlines Container Shipping, Ltd.,
   476 F. Supp. 119 (S.D.N.Y. 1979) ................................................................ 15, 17, 22

J.K. Int'l, Pty., Ltd. v. Agriko S.A.S., 2007 U.S. Dist. LEXIS 10074
   (S.D.N.Y. 2007)......................................................................................................... 7

Lumbermens Mut. Casualty Co. v. Borden Co., 268 F. Supp. 303
   (S.D.N.Y. 1967).......................................................................................................13

Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560 (2nd Cir.
   1996) ...................................................................................................................... 17

Nutmeg Ins. Co. v. Iowa Mut. Ins. Co., 2005 U.S. Dist. LEXIS 12834
   (S.D.N.Y. 2005)....................................................................................................... 14

<u>Royal Swan Navigation Co. v. Global Container Lines</u>, 868 F. Supp. 599
  (S.D.N.Y. 1994) ............................................................................................. 12

<u>Sankaran v. Club Mediterranee, S.A.</u>, 1998 U.S. Dist. LEXIS 11750
  (S.D.N.Y. 1998) ............................................................................................. 20

<u>Tese-Milner v. Ad EFX Promotions, Inc.</u>, 2007 U.S. Dist. LEXIS 5397
  (S.D.N.Y. 2007) ............................................................................................. 19

<u>VTT Vulcan Petroleum v. Langham-Hill Petroleum, Inc.</u>, 684 F. Supp.
  389 (S.D.N.Y. 1988) ............................................................................ 9, 14, 16, 24

<u>Welinsky v. Resort of the World D.N.V.</u>, 839 F.2d 928 (2nd Cir. 1988) .......................... 19

<u>Western Bulk Carriers (Australia), Pty. v. P.S. Int'l. Ltd.</u>, 762 F. Supp.
  1302 (S.D. Ohio 1991) ..................................................................................... 23

<u>Wiwa v. Royal Dutch Petroleum Co.</u>, 226 F.3d 88 (2nd Cir. 2000) ...................... 17, 18, 19

**Statutes**

New York Business Corporation Law § 307 ................................................................. 3

**Rules**

Civil Practice Law and Rules 302(a) (McKinney 2006) ................................................ 13

Civil Practice Law and Rules 311(a) (McKinney 2006) ........................................... 11, 12

Federal Rule of Civil Procedure B(1)(a) & (b) ............................................................. 8

Federal Rule of Civil Procedure E(4)(f) ...................................................................... 7

Pursuant to Supplemental Rule E(4)(f) of the Federal Rules of Civil Procedure, defendant Progress Bulk Carriers, Ltd. ("PBC") respectfully submits this Memorandum of Law in support of its motion to vacate the Ex Parte Order for issuance of process of maritime attachment and garnishment ("Attachment Order") issued pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claim of the Federal Rules of Civil Procedure ("Rule B") and for dismissal of plaintiff's Verified Complaint. The facts in support of this motion are set forth in the Affirmation of Ibrahim Mazman dated January 22, 2008 ("Mazman Decl."), the Affirmation of Kirk M. Lyons dated January 23, 2008 ("Lyons Aff."), and the Exhibits annexed thereto, to which the Court is respectfully referred.

## **Preliminary Statement**

Plaintiff, Far Eastern Shipping Co. ("FESCO"), commenced this action on December 19, 2007, claiming damages against PBC based on PBC's October 22, 2002, time charter of the M/V CHERKASSY (the "Vessel") from FESCO. (See Lyons Aff. at ¶ 2). FESCO also sought and obtained the Attachment Order for issuance of process of maritime attachment and garnishment. In support of its application for the Attachment Order, counsel for FESCO submitted an Affidavit claiming that PBC could not be found within the Southern District of New York (the "District"). (See the Affidavit of Gerald Weathers dated December 18, 2007 ("Weathers Affidavit"), annexed as Exhibit B to the Lyons Aff.)

On December 21, 2007, this Court issued the Attachment Order in the sum of $909,153.86. (See Lyons Aff. at ¶ 3). FESCO served process of maritime attachment and garnishment ("PMAG") on various garnishee banks within the Southern District of

New York and on December 24, 2007, an electronic funds transfer ("EFT") in the amount of $509,324.21, being routed through Deutsche Bank for the benefit of PBC, was attached pursuant to the Attachment Order and PMAG.  (See Lyons Aff. ¶ 5).

The premise for PBC's motion is that plaintiff has not met all of the requirements for obtaining the Attachment Order in that PBC was "present" within the District at the time the action was commenced, thus precluding Rule B maritime attachment as a pre-judgment remedy available to the plaintiff, or alternatively, that PBC was subject to an *in personam* lawsuit in the Eastern District of New York, and thus falls within the "across the river" exception to Rule B attachments set forth by the Second Circuit in <u>Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.</u>, 460 F.3d 434 (2nd Cir. 2006).

### Facts

As noted above, in support of its motion for the Ex Parte Order and PMAG, counsel for FESCO submitted an Affidavit Pursuant to Supplemental Rule B(1)(b) setting forth its basis for obtaining the Attachment Order.  (See Exhibit B to Lyons Aff.).

In the Weathers Affidavit, counsel for FESCO stated that he had performed an investigation into whether PBC could be "found" within the District, and specifically as to whether PBC had an agent for service of process and a jurisdictional presence in the District.  (See Exhibit B to Lyons Aff. at ¶ 2).

In conducting his investigation, counsel for FESCO discovered that PBC maintained a telephone number in New York under the care of American Corporate Technical Services, Inc. ("ACTS").  (See Exhibit B to Lyons Aff. at ¶¶ 2(b)(c) and (d)).  Moreover, counsel for FESCO admitted that this telephone number was listed for PBC by

Verizon Nationwide 411 as well as the 2007 Edition of the Journal of Commerce's Transportation Telephone Tickler. (See Exhibit B to Lyons Aff. at ¶¶ 2(b) and (d)).

Plaintiff's counsel also went so far as to call PBC's telephone number ((914) 478-1469) and after hearing "ACTS," he apparently hung the telephone up. (See Exhibit B at ¶¶ 2(b) - (d)). However, even though he knew there was a connection between defendant and ACTS (see the Weathers' Affidavit which makes reference to "the apparent relationship between Defendant and American Corporate Technical Services, Inc.," Exhibit B at ¶ 2(e)), plaintiff's counsel did not ask the logical question when he called that telephone number. The logical question is and was – what was the connection between ACTS and defendant.

If counsel for FESCO had asked that simple question when calling (914) 478-1469, he would have been advised that ACTS is the agent for service of process for defendant and ACTS has an address in this District. On January 23, 2008, defendant's counsel made the same telephone call and was advised that ACTS is the agent for service of process for defendant and ACTS has an address in this District. (See Lyons Aff. at ¶ 11).

However, counsel for FESCO failed to discover (or failed to mention in the Weathers Affidavit) that in addition to the telephone number, PBC also had an address listed in the District, namely 25 Main Street, Hastings-on-Hudson, NY 10706. This information was readily ascertainable by an electronic search of any of a number of telephone and business directories. (A representative example of the results found when searching for "Progress Bulk" and "NY" is annexed hereto as Exhibit D to the Lyons Aff.).

Moreover, although PBC was not licensed, registered, or authorized to conduct business in New York, PBC had appointed ACTS as its agent for the service of process in New York by the filing of a Form U-2 (Uniform Consent to Service of Process) with the State of New York, Office of the Attorney General. This confirms that ACTS has an address at 25 Main Street, Hastings-on-Hudson, New York, which is within this District. (See Exhibit E annexed to the Lyons Aff.).[1]

Indeed, other plaintiffs in the District have served process upon PBC via ACTS. Specifically, on October 15, 2007, Peter D. Wolf, President of ACTS accepted service of process on behalf of PBC in connection with the lawsuit bearing the caption Dicalite Armenia, Inc. v. Progress Bulk Carriers, Ltd., 07 Civ. 8660 (WHP), USDC, SDNY. (See Affidavit of Service, a copy of which is annexed hereto as Exhibit F to the Lyons Aff.).

It also appears that counsel for FESCO's belief that ACTS was an agent of PBC, led counsel for FESCO to then check with the New York Department of State, Division of Corporations to learn the corporate status of ACTS and determine whether ACTS was present within the District. (See Exhibit B at ¶ 2(e) to Lyons Aff.).

Upon determining that ACTS was not actively licensed, authorized, or registered to do business in New York, counsel for FESCO continued his investigation to determine the jurisdictional presence of PBC in the District. Counsel for FESCO's search for the jurisdictional presence of PBC in the District revealed a website referring to Med

---

[1] ACTS had been registered as a New York domestic business corporation since February 19, 1999, but the registration had become inactive. However, the New York Department of State, Division of Corporations search would still have provided counsel for FESCO with notice that the address on record for service of process on ACTS was "C/O PETER D. WOLF, 36 MAIN ST., 2ND FL., HASTINGS-ON-HUDSON, NEW YORK, 10706." (See NYS Department of State, Division of Corporations print-out dated January 22, 2008, annexed hereto as Exhibit G to Lyons Aff.).

-4-

Brokerage and Management, Corp. ("MED") as being "managing agents for progress bulk carriers." (See Exhibit B at ¶ 2(g) to Lyons Aff.).

Counsel for FESCO was thus aware that MED was PBC's managing agent. However, despite this knowledge, it appears that counsel for FESCO did not perform any additional investigation into MED's status or relationship with PBC.

If counsel for FESCO had checked with the New York Department of State, Division of Corporations to further investigate MED and determine its corporate status, counsel for FESCO would have learned that MED was a New York domestic business corporation, actively licensed, authorized, and registered to do business in New York. Moreover, counsel for FESCO would have learned that one of MED's listed locations was in the Southern District of New York. (See Exhibit A to the Mazman Decl.).

Counsel for FESCO's failure to perform a further investigation into MED is baffling in light of counsel for FESCO's admission that the reference to MED on the website was "the only indication that Defendant conducts any activities in New York...." (See Exhibit B at ¶ 2(g) to Lyons Aff.).

Having discovered an "indication" that PBC conducted activities in New York, counsel for FESCO nevertheless appears to have terminated his investigation as to the nature of those activities, resting on the belief that even if MED were PBC's "agent in the legal, rather than commercial sense, merely having an agent amendable to service of process does not render one 'found' within the court's jurisdiction." (See Exhibit B at ¶ 2(g) to Lyons Aff.).

Counsel for FESCO appears to have neglected to consider whether the presence of an agent in the "commercial" sense might render a defendant found within the District.

The readily discoverable truth was that MED was indeed the managing agent of PBC and that MED had an office in Manhattan as well as Long Island.  (See Mazman Decl. at ¶¶ 2 and 3).

It is clear that PBC was present within the District at the time plaintiff filed the Verified Complaint.  PBC was jurisdictionally present by virtue of its managing agent MED's presence in the District and continuous and systematic contacts with the District. PBC was amenable to service of process within the District because plaintiff could have served process upon PBC either via its agent for service of process ACTS (who had an office in the District) or via its managing agent MED (who also maintained an office in the District).

In these circumstances, PBC's presence within the District was readily discoverable by the exercise of due diligence.

## ARGUMENT

## POINT I

### PLAINTIFF HAS FAILED TO MEET ITS RULE E(4)(f) BURDEN UNDER AQUA STOLI

It is well-settled that a Rule B maritime attachment may not be obtained unless a plaintiff can establish that: (a) it has a valid *prima facie* admiralty claim; (b) the named defendant cannot be found within district; (c) the defendant's property attached was within the district; and (d) there is no statutory or maritime law bar to the attachment. Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2nd Cir. 2006).

Moreover, "a district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rule B and E." Aqua Stoli, 460 F.3d 434, 445.

Rule E(4)(f) further provides that "[w]henever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." J.K. Int'l, Pty., Ltd. v. Agriko S.A.S., 2007 U.S. Dist. LEXIS 10074, at *6-7 (S.D.N.Y. 2007) (quoting FRCivP, Supp. R. E(4)(f)).

Thus, it is a plaintiff's burden at the post-attachment hearing to show that it has met all of the requirements of Rule B as set out in the Second Circuit's decision in Aqua Stoli, supra.

As PBC will show, plaintiff FESCO will be unable to carry its burden because it cannot show that PBC was "not present within the District" at the time the Verified Complaint was filed. Moreover, PBC was subject to an *in personam* lawsuit in a convenient adjacent district, the Eastern District of New York, and, therefore, the Attachment Order should be vacated on that ground alone as well.

## POINT II

### DEFENDANT PBC WAS PRESENT WITHIN THE DISTRICT WHEN PLAINTIFF'S VERIFIED COMPLAINT WAS FILED

As set forth above, one of the required elements which a plaintiff must establish for an order of attachment to be issued under Rule B is that the defendant cannot be "found within the district." See Supplemental Admiralty Rule B(1)(a) and (b).

It is well-settled in this Circuit that the standard for presence within a District for the purposes of a Rule B attachment is a two-pronged inquiry, requiring that a defendant be present both for the purposes of service of process as well as jurisdictionally. Both prongs must be met in order for the defendant to be "found within the district" under Rule B. See, e.g., Seawind Compania, S. A. v. Crescent Line, Inc., 320 F.2d 580, 582-83 (2nd Cir. 1963) (finding that "the requirement is said to present 'a two-pronged inquiry: First, whether (the respondent) can be found within the district in terms of jurisdiction, and second, if so, whether it can be found for service or process'") (citations omitted); Oilmar Co. v. Energy Transp., Ltd., 2003 U.S. Dist. LEXIS 14350 (D. Conn. 2003); Blueye Navigation v. Oltenia Navigation, 1995 U.S. Dist. LEXIS 1844, at *11-12 (S.D.N.Y. 1995); VTT Vulcan Petroleum v. Langham-Hill Petroleum, Inc., 684 F. Supp. 389, 390 (S.D.N.Y. 1988); Federazione Italiana Dei Consorzi Agrari v. Mandask Compania De Vapores, S.A., 158 F. Supp. 107, 112 (S.D.N.Y. 1957).

Thus, in order to maintain its Rule B attachment, FESCO must establish that at the time it filed the Verified Complaint, PBC could not be found within the district in terms of personal jurisdiction and could not be found for service of process.

a.    **Defendant PBC had an agent for the**
     <u>**service of process within the District**</u>

At the time the Verified Complaint was filed, PBC had at least two separate and readily discoverable agents for the service of process within the District.

First, ACTS had been appointed as PBC's agent for the service of process and this appointment was recorded by the filing of a Form U-2 (Uniform Consent to Service of Process) with the State of New York, Office of Attorney General.  (See Exhibit E to Lyons Aff.).

At the time the action was commenced, plaintiff was aware of a relationship between defendant and ACTS.  (See ¶ 10 of Lyons Aff.).  Yet, despite this knowledge, plaintiff curtailed its investigation and failed to learn what was readily available to it. Namely, that ACTS was PBC's agent for service of process in this District.  (See ¶¶ 8-14 of Lyons Aff.).

Indeed, other plaintiffs in the District have served process upon PBC via ACTS. Specifically, on October 15, 2007, Peter D. Wolf, President of ACTS accepted service of process on behalf of PBC in connection with the lawsuit bearing the caption <u>Dicalite Armenia, Inc. v. Progress Bulk Carriers, Ltd.</u>, 07 Civ. 8660 (WHP), USDC, SDNY.  (See Exhibit F to the Lyons Aff.).

Second, MED was also PBC's agent for the service of process, present in the District, and this too was readily discoverable by plaintiff FESCO.

As noted above, in 1998, PBC appointed MED, a registered New York domestic business corporation which maintains offices in Manhattan and in Glen Cove, New York,

as its managing agent for its worldwide shipping business. (See Mazman Decl. at ¶¶ 2 and 3).

The existence of MED's office in Manhattan was readily ascertainable from the records maintained by the New York Department of State, Division of Corporations, or from a search of the usual telephone and business directories.

Counsel for FESCO conceded in plaintiff's application for the Attachment Order that he was aware of the existence of MED and of MED's status as managing agent of PBC. (See Exhibit B to Lyons Aff. at ¶ 2(g)). Despite this knowledge, plaintiff went forth with the application under Rule B based on the "fact" that defendant was not present in the District.

That a managing agent is authorized to accept service of process is well-established. Section 311(a) of New York's Civil Practice Law and Rules provides in pertinent part that:

> (a) Personal service upon a corporation or governmental subdivision shall be made by delivering the summons as follows:
>
> 1. upon any domestic or foreign corporation, to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service.

CPLR 311(a) (McKinney 2006); see also Royal Swan Navigation Co. v. Global Container Lines, 868 F. Supp. 599, 601 (S.D.N.Y. 1994) ("Service upon a corporation can be made, in accordance with Rules 4(e)(1) and 4(h)(1) of the Federal Rules of Civil Procedure and section 311 of the New York Civil Practice Law and Rules (McKinney 1990), by, among other methods, delivering a copy of the summons and complaint to a director, officer,

managing agent, general agent, cashier, or assistant cashier of the corporation, or any other agent authorized by appointment to receive service.")

Thus, under New York law, and consistent with Federal law, service of process upon PBC could be made by service upon ACTS, as agent appointed to accept service of process, or MED, as PBC's managing agent. In fact, ACTS and MED had been specifically authorized to accept service of process by PBC, and moreover, had accepted service of process upon PBC in the past. (See Mazman Decl. at ¶ 21 and Lyons Aff. at ¶14, Ex. F).

### b. Defendant PBC was jurisdictionally present within the District

Personal jurisdiction over PBC exists under either a specific or general jurisdictional analysis.

Under New York law, specific jurisdiction is governed by Section 302(a) of New York's Civil Practice Law and Rules, which provides in pertinent part, that:

> a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state....

CPLR 302(a) (McKinney 2006).

If a claim against a defendant arises out of or relates to the defendant's contacts with New York, these contacts may constitute the minimum contacts necessary to justify specific jurisdiction. Courts have held that under the "transacts any business" clause of CPLR 302(a)(1), a nonresident defendant may be subject to long-arm jurisdiction if the defendant negotiated for and executed a contract in New York. See, e.g., A.I. Trade Fin.,

Inc. v. Petra Bank, 989 F.2d 76, 80 (2nd Cir. 1993) (holding that a defendant's breach of contract for failure to perform financial services in New York was sufficient to subject the defendant to personal jurisdiction under CPLR 302); Lumbermens Mut. Casualty Co. v. Borden Co., 268 F. Supp. 303 (S.D.N.Y. 1967) (holding that foreign corporation which entered into a contract in New York, executed contract in New York, and whose representatives visited New York to negotiate the contract was transacting business within the state of New York so as to subject it to specific jurisdiction.)

Further, the mere act of negotiating for a contract within the state may, in certain instances, be sufficient to establish jurisdiction, regardless of where the contract is finally issued. See, e.g., Nutmeg Ins. Co. v. Iowa Mut. Ins. Co., 2005 U.S. Dist. LEXIS 12834, at *11 (S.D.N.Y. 2005); see also Vulcan Petroleum, supra, 684 F. Supp. at 392 (observing that "In Seawind, the fact that the contract was made and allegedly breached in New York meant that the defendant 'could clearly be made subject to suit in New York, even in the absence of a resident agent expressly authorized to accept process.'")..

As noted above, plaintiff's lawsuit relates to a dispute over PBC's October 22, 2002, time charter of the Vessel from plaintiff. MED was the managing agent for PBC when the Vessel was chartered from FESCO. (See Mazman Decl. at ¶ 8). Moreover, the time charter of the Vessel was negotiated in New York and the broker involved on behalf of PBC was Ekko Chartering LLC, a New York domestic business corporation with an office located within the District. (See Mazman Decl. at ¶ 9). Additionally, among the terms and conditions of the time charter was the requirement that payment of hire be made to plaintiff in New York. (See Mazman Decl. at ¶ 10).

Thus, the time charter at the heart of plaintiff's lawsuit was negotiated in New York by PBC's New York based managing agent, with the assistance of PBC's New York based chartering broker, and called for hire payments to be made in New York. (See Mazman Decl. at ¶ 11). These connections to New York provide the basis for this Court's assertion of specific jurisdiction over defendant PBC. See, e.g., Seawind Compania, S. A., supra, 320 F.2d at 583 (finding that specific jurisdiction was properly asserted where "[t]he contract in suit was made and allegedly breached by [the Rule B defendant] in New York."); Integrated Container Service, Inc. v. Starlines Container Shipping, Ltd., 476 F. Supp. 119, 123 (S.D.N.Y. 1979) (finding that finding that although a Rule B defendant had ceased to do business, closed its office, disconnected its telephone in New York, and had no employees present in New York, the defendant was nevertheless subject to specific jurisdiction since "[t]he lease agreements in question were negotiated and signed for the [defendant] in New York by [defendants' agent]. Two agreements called for submission to the jurisdiction of the courts of New York; the third called for submission to arbitration in New York with New York law to apply. One of the agreements authorized service of process on the lessees by certified or registered mail sent to the lessees in care of [defendants' agent]. Defendants point also to the fact that [defendants] have attorneys in New York which are representing them in connection with several litigations.").

Alternatively, PBC asserts that it was present in the District jurisdictionally because this Court could exercise general jurisdiction over PBC.

In determining whether general jurisdiction can be obtained over PBC, defendant respectfully submits that this Court should look towards New York's jurisdictional laws.

See Erne Shipping Inc. v. HBC Hamburg Bulk Carriers GMBH & Co. KG, 409 F. Supp.
2d 427, 432-33 (S.D.N.Y. 2006), rejected on other grounds by Aqua Stoli Shipping Ltd.
v. Gardner Smith Pty Ltd., 460 F.3d 434 (2nd Cir. 2006) (noting that "[s]uch an inquiry
would be consistent with Seawind's formulation requiring that 'the respondent be
engaged in sufficient activity in the district to subject it to jurisdiction' ... and with the
broader principle that 'the law of the forum state ... governs the issue of personal
jurisdiction in admiralty cases' generally."); see also D.H. Blair & Co., Inc., v.
Gottdiener, 462 F.3d 95, 104 (2nd Cir. 2006) (noting that in a diversity case, the issue of
personal jurisdiction must be determined according to the law of the forum state and any
exercise of personal jurisdiction must also comport with the Due Process Clause); VTT
Vulcan Petroleum, [insert cite], supra; Integrated Container Service, Inc., supra, 476 F.
Supp. at 123.

In determining whether general jurisdiction can be obtained over a defendant,
courts applying New York law have looked to whether a defendant has "continuous and
systematic" general business contacts with New York.  See, e.g., Wiwa v. Royal Dutch
Petroleum Co., 226 F.3d 88, 98 (2nd Cir. 2000); Metropolitan Life Ins. Co. v. Robertson-
Ceco Corp., 84 F.3d 560, 568 (2nd Cir. 1996); Helicopteros Nacionales de Colombia, S.A.
v. Hall, 466 U.S. 408, 416, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984).

In assessing whether a defendant corporation's contacts are "continuous and
systematic," courts have typically focused on factors such as: "whether the company has
an office in the state, whether it has any bank accounts or other property in the state,
whether it has a phone listing in the state, whether it does public relations work there, and
whether it has individuals permanently located in the state to promote its interests." Erne

Shipping Inc., supra, 409 F. Supp. 2d at 434 (citing Wiwa, supra, 226 F.3d at 98, Hoffritz

for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 58 (2nd Cir. 1985) and Frummer, supra);

Federazione Italiana Dei Consorzi Agrari, supra, 158 F. Supp. at 109 (holding that a

corporation is "found" within the district only if it is "present in the district by its officers

and agents carrying on the business of the corporation.")

     In terms of traditional contacts with New York, PBC had a telephone listing in the

District as well as an address it maintained in the District.  Moreover, PBC via MED,

routinely purchased bunkers from a broker in the District, dealt with charting brokers in

the District, dealt with insurance brokers and insurers in the District, had a number of

chartering customers in the District, and had been involved in a number of lawsuits in the

District.  (See Mazman Decl. at ¶¶ 13-19).

     However, most importantly PBC's managing agent MED was also physically

present and conducted PBC's business in the District.

     In Tese-Milner v. Ad EFX Promotions, Inc., 2007 U.S. Dist. LEXIS 5397

(S.D.N.Y. 2007), the court explained:

> New York courts may exercise jurisdiction over a foreign
> corporation based upon the activities performed by its agent
> in New York. Under well-established New York law, a
> court of New York may assert jurisdiction over a foreign
> corporation when it affiliates itself with a New York
> representative entity and that New York representative
> renders services on behalf of the foreign corporation that go
> beyond mere solicitation and are sufficiently important to
> the foreign entity that the corporation itself would perform
> equivalent services if no agent were available.

Tese-Milner v. Ad EFX Promotions, Inc., 2007 U.S. Dist. LEXIS 5397, at *11-12

(S.D.N.Y. 2007) (quoting Wiwa, supra, 226 F.3d at 95, and citing Frummer, supra;

Welinsky v. Resort of the World D.N.V., 839 F.2d 928, 929 (2nd Cir. 1988); and Gelfand

v. Tanner Motor Tours, Ltd., 385 F.2d 116, 120-21 (2nd Cir. 1967)).

To determine whether an in-state entity is acting as a non-resident's agent for

jurisdictional purposes, courts look to whether the former "does all the business which

[the non-resident] could do were it here by its own officials." Frummer, supra, 281

N.Y.S.2d at 44.

The Second Circuit further explained the Frummer standard to mean that a foreign

corporation is doing business in New York in the traditional sense when its New York

representative provides services beyond mere solicitation and these services are

sufficiently important to the foreign corporation that if it did not have a representative to

perform them, the corporation's own officials would undertake to perform substantially

similar services. Gelfand, supra, 385 F.2d at 121; see also Sankaran v. Club

Mediterranee, S.A., 1998 U.S. Dist. LEXIS 11750, at *8 (S.D.N.Y. 1998).

Under its agency agreement with MED, PBC engaged MED to "perform certain

worldwide shipping business functions and services" including (a) negotiation and

conclusion of agreements to obtain, lease and/or charter vessels, (b) negotiation and

purchase of supplies and/or services such as crews, fuel, port fees, tugs, dunnage,

maintenance and repair, (c) furnishing of vessel support services such as marketing and

sales, booking of cargo, issuing of bills of lading, receiving freight payments, collection,

claims handling, voyage accounting, paying suppliers, (d) and the provision of other

services reasonably requested by PBC such as insurance procurement, participation in

dispute resolution, etc. (See Mazman Decl. at ¶ 4 and at Exhibit B).

Thus, MED managed the day-to-day operation of PBC's fleet of vessels and substantially all of the activities involved in managing PBC's worldwide shipping business are performed exclusively by MED. (See Mazman Decl. at ¶ 5).

Given these facts, it is clear that MED provides services beyond mere solicitation and these services are sufficiently important to PBC such that in the absence of MED, PBC would undertake to perform substantially similar services.

Therefore, MED was clearly acting as PBC's agent for jurisdictional purposes and thus, PBC's presence for purposes of *in personam* jurisdiction may properly be established via MED's actions on behalf of PBC.

## POINT III

### DEFENDANT PBC COULD HAVE BEEN SUED IN A CONVENIENT ADJACENT JURISDICTION WHEN PLAINTIFF'S VERIFIED COMPLAINT WAS FILED

In the alternative, even if this Court does not find that PBC was present within the District at the time plaintiff's Verified Complaint was filed, the Attachment Order should nevertheless be vacated under the "across the river" exception to Rule B attachments set forth by the Second Circuit in Aqua Stoli, supra.

In Aqua Stoli, the Second Circuit set forth three (and only three) limited circumstances whereby an attachment may be vacated by the Court even though it otherwise met the qualifications set forth in Rule B. One of these exceptions was the "across the river" case which the Court described in the following passage:

> We believe that an attachment may be vacated only in certain limited circumstances. Although the precise boundaries of a district court's vacatur power are not before us, we are persuaded that vacatur may be warranted when the defendant can show that it would be subject to in personam jurisdiction in another jurisdiction convenient to

-17-

the plaintiff.  See Integrated, 476 F.Supp. 119, 124 cf. Det Bergenske Dampskibsselskab v. Sabre Shipping Corp., 341 F.2d 50, 52-53 (2d Cir.1965) (discussing, but not resting on, the district court's vacatur of an attachment issued in the Eastern District because the defendant was present in the Southern District).  The concept of "convenience," however, is a narrowly circumscribed one: A district court may vacate a maritime attachment only if the defendant would be subject to an in personam lawsuit in a jurisdiction adjacent to the one in which the attachment proceedings were brought.  An "across the river" case where, for example, assets are attached in the Eastern District but the defendant is located in the Southern District is a paradigmatic example of a case where an attachment should be vacated.  It is less clear to us that a district court could vacate an attachment on convenience grounds where the adjacent district is more remote and therefore less obviously "convenient" to the plaintiff.

Aqua Stoli, supra, 460 F.3d at 444-445.

Other pre-Aqua Stoli courts have reached similar holdings or suggested similar treatment where an "across the river" case might be appropriate.  See, e.g., Integrated Container Service, Inc., supra, 476 F. Supp. at 124 (observing the unfairness inherent in permitting maritime attachments when normal civil proceedings are readily available); Western Bulk Carriers (Australia), Pty. v. P.S. Int'l. Ltd., 762 F. Supp. 1302, 1309 (S.D. Ohio 1991) ("The Court does have discretion to set aside an unfair attachment where the use of the maritime remedy is abusive, such as where an attachment is obtained unfairly in one district while a proper lawsuit could be commenced in another district without unfairness or convenience."); D/S A/S Flint v. Sabre Shipping Corp., 228 F. Supp. 384 (E.D.N.Y. 1964), aff'd on other grounds sub nom., Det Bergenski Dampskibsselskab v. Sabre Shipping Corp., 341 F.2d 50 (2nd Cir. 1965).

-18-

Here, plaintiff's lawsuit presents a "paradigmatic" example of an "across the river" case and thus vacatur is clearly warranted. PBC is surely subject to *in personam* lawsuits in the Eastern District of New York by virtue of the presence of its managing agent MED in the Eastern District. (See POINT II, supra). There can similarly be no doubt that the Eastern District of New York is a "convenient" jurisdiction, since the Second Circuit's own example of convenience in its explanation of the basis for vacatur on those grounds also involved the Southern and Eastern Districts of New York.

Even if this Court finds that PBC's conducting of business through its managing agent MED is an insufficient basis to assert general jurisdiction over PBC, PBC is nevertheless subject to *in personam* lawsuits by virtue of MED's status as an agent for service of process.

In VTT Vulcan Judge Leisure, in ruling on a motion to vacate an attachment, held that:

> Although an agent for service of process might provide a basis for *in personam* jurisdiction in other contexts, the presence of an agent alone will not satisfy the two-prong test for vacating maritime attachment.

VTT Vulcan, supra, 684 F. Supp. at 390, n. 1.

The two-prong test is not applicable in determining whether an attachment should be vacated in an "across the river" context. Rather, the relevant inquiry is merely whether "the defendant would be subject to an *in personam* lawsuit in a jurisdiction adjacent to the one in which the attachment proceedings were brought." Aqua Stoli, supra, 460 F.3d at 444-445.

Such a reading comports with the general policy behind Rule B attachments as stated in <u>Aqua Stoli</u>:

> Maritime attachments arose because it is frequently, but not always, more difficult to find property of parties to a maritime dispute than of parties to a traditional civil action. Thus, the traditional policy underlying maritime attachment has been to permit the attachments of assets wherever they can be found and not to require the plaintiff to scour the globe to find a proper forum for suit or property of the defendant sufficient to satisfy a judgment.

<u>Aqua Stoli</u>, <u>supra</u>, 460 F.3d at 443 (internal citations omitted).

Where a defendant, such as PBC, is present and amenable to an *in personam* lawsuit in a convenient adjacent jurisdiction, a Rule B plaintiff would not be forced to "scour the globe to find a proper forum for suit" in the absence of a Rule B attachment. Thus, defendant respectfully submits that not only would this Court be justified in ordering vacatur of the Attachment Order, but vacatur is mandated in these circumstances.

## **CONCLUSION**

Plaintiff respectfully requests that this Court grant defendant PBC's motion to vacate the Attachment Order and to dismiss plaintiff's Verified Complaint in its entirety and grant plaintiff such other and further relief as the Court sees fit.

Dated: January 23, 2008

LYONS & FLOOD, LLP
Attorneys for Defendant
PROGRESS BULK CARRIERS, LTD.

By: _____
Kirk M. Lyons (KL-1568)
65 West 36th Street, 7th Floor
New York, New York 10018
(212) 594-2400

U:\kmhldocs\2656001\Motions\MOL-Vacate.doc

-21-

## CERTIFICATE OF SERVICE

Kirk M. Lyons, an attorney duly admitted to practice before this Honorable

Court, affirms on this 24th day of January 2008, I served true copies of the foregoing, by

e-mail and ECF notice to:


LAW OFFICES OF SIMON HARTER, ESQ.
Attorneys for Plaintiff
304 Park Avenue South, 11th Floor
New York, NY 10010

Attn.:  Simon Harter, Esq.
        sharter@harterlaw.com


_Kirk M. Lyons_
                                    Kirk M. Lyons

U:\kmhldocs\2656001\Motions\MOL-Vacate.doc