UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

FAR EASTERN SHIPPING CO.,       :     **<u>ECF CASE</u>**

                    :

         Plaintiff,     :     **07-CV-11375 (PAC)(GWW)**

                    :

   -against-         :

                    :

PROGRESS BULK CARRIERS, LTD.,    :

                    :

        Defendant.    :

-------------------------------------------------------------x

 

**MEMORANDUM OF LAW OF PLAINTIFF, FAR EASTERN SHIPPING CO.,
IN OPPOSITION TO DEFENDANT, PROGRESS BULK CARRIERS, LTD.'s,
MOTION TO VACATE THE RULE B MARITIME ATTACHMENT**

 

**LAW OFFICES OF SIMON HARTER, ESQ.**
Attorneys for Plaintiff, Far Eastern Shipping Co.
304 Park Avenue South – 11th Floor
New York, New York 10010
(212) 979-0250 – Phone
(212) 979-0251 – Fax

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... ii

INTRODUCTION ......................................................................... 1

ARGUMENT ............................................................................. 3

POINT I

DEFENDANT HAS FAILED TO DEMONSTRATE THAT IT
IS "FOUND" IN THE SOUTHERN DISTRICT OF NEW YORK ................ 3

A.    Defendant Has Not Established That It Has A Valid Agent
      for Service of Process in the Southern District of New York ............. 3

B.    Defendant Has Not Established That It Is Subject To
      Personal Jurisdiction in the Southern District of New York .............. 10

POINT II

DEFENDANT HAS FAILED TO DEMONSTRATE THAT IT
IS "FOUND" IN THE EASTERN DISTRICT OF NEW YORK ................... 15

A.    Defendant Has Not Established That It Is Subject To
      Personal Jurisdiction in the Eastern District of New York ................ 16

POINT III

IN THE EVENT DEFENDANT MAKES ADDITIONAL FACTUAL
SUBMISSIONS, PLAINTIFF RESPECTFULLY REQUESTS, IN THE
ALTERNATIVE, THAT IT BE PERMITTED LIMITED DISCOVERY
INTO THE GROUNDS FOR DEFENDANT'S FACTUAL
CONTENTIONS .......................................................................... 17

CONCLUSION ........................................................................... 18

# TABLE OF AUTHORITIES

CASES

Agency Rent A Car System, Inc. v. Grand Rent A Car Corp.,
98 F.3d 25, 29 (2d Cir. 1996) ……………………………………………    12, 13

Aqua Stoli v. Shipping Ltd. v. Gardner Smith Pty Ltd.,
460 F.3d 434, 444-5, 2006 A.M.C. 1872 (2d Cir. 2006) …………………………    2, 15

Centauri Shipping Ltd. v. Western Bulk Carriers KS,
2007 WL 3025706 (S.D.N.Y. 2007) …………………………………………    3, 11, 16

Iyalla v. TRT Holdings, Inc., 2005 WL 1765707 at *3 (S.D.N.Y. 2005) ……….    11

Parkroad Corp. v. China Worldwide Shipping Co., 2005 U.S.Dist.
LEXIS 11122, *3, 2005 A.M.C. 1839 (S.D.N.Y. 2005) ……………………………    12

Seawind Compania S.A. v. Crescent Line, Inc., 320 F.2d 580, 582,
1964 A.M.C. 617 (2d Cir. 1963) …………………………………………….    3, 16

Speed v. Pelican Resort N.V., 1992 WL 147646 at *1 (S.D.N.Y. 1992) ………..    11

Tese-Milner v. AD EFX Promotions, Inc., 2007 WL 1966866
(S.D.N.Y. 2007) ……………………………………………………………    14, 16

Wiwa v. Royal Dutch Petroleum, 226 F.3d 88, 95 (2d Cir. 2000),
cert. denied, 532 U.S. 941 (2001) …………………………………………….    15, 16


COURT RULES

Civil Procedure Law and Rules 311(a) (McKinney 2006) ……………………..    16

## **INTRODUCTION**

Plaintiff, Far Eastern Shipping Co., submits the Affirmation of Simon Harter, Esq. in Opposition to Defendant's Motion to Vacate, dated January 29, 2008 (hereinafter "*Harter Aff.*), and this Memorandum of Law in Opposition to Defendant, Progress Bulk Carriers, Ltd.'s, Motion to Vacate the Rule B Maritime Attachment.

Plaintiff filed this action on Wednesday, December 19, 2007. On Friday, December 21, 2007, this Court granted Plaintiff's application for an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment. Plaintiff began serving the Order and PMAG on various banks the same day and on Monday, December 24, 2007, the next business day, undersigned counsel received email confirmation from Deutsche Bank that it had restrained a wire transfer in the amount of $509,324.41 pursuant to this Court's PMAG. That same day, undersigned counsel served written notice of the attachment pursuant to Local Rule B.2 to PBC by telecopier in care of Barry Young, Esq., the English solicitor representing Defendant in a London arbitration commenced by Plaintiff. Undersigned then had several conversations and correspondence with Mr. Young, beginning on December 27, 2007 and further conversation and correspondence have been exchanged between Mr. Young and Plaintiff's London solicitors through the present time.

On the late morning of Thursday, January 24, 2008, Defendant's counsel served undersigned counsel with an Order to Show Cause why Plaintiff's maritime attachment should not be vacated and setting the hearing on the motion for the following day, January 25, 2008 at 2:30 pm. FESCO immediately requested an

- 1 -

adjournment of the hearing in order to prepare its opposition, but the Court declined this request for reasons stated in Court.   The hearing took place as scheduled, and at the conclusion, this Court kindly granted FESCO until Tuesday, January 29 to file any written submission it wished to make in opposition to Defendant's motion, and gave Defendant until Friday, February 1 in which to submit any reply.

At the hearing on January 25th, the Court asked counsel for Defendant to state Defendant's position with respect to the grounds for vacating the attachment. Counsel for Defendant responded that vacatur was warranted because it is "found" in the Southern District of New York, and also in the Eastern District of New York, which the Second Circuit characterized as a convenient, adjacent district in <u>Aqua Stoli v. Shipping Ltd. v. Gardner Smith Pty Ltd.</u>, 460 F.3d 434, 444-5 (2d Cir. 2006).

Defendant alleges that in the Southern District of New York, it has two agents for service of process, American Corporate Technical Services ("ACTS") and Med Brokerage and Management, Corp. ("Med Brokerage"), and that it is subject to both specific and general jurisdiction by virtue of commercial activities in its behalf by Med Brokerage.  Defendant alleges further that, "across the river" in the Eastern District of New York, Med Brokerage is its agent for service of process and that it is subject to personal jurisdiction there by virtue of commercial activities by Med Brokerage on its behalf.

For the reasons stated herein, Plaintiff asserts that Defendant is not "found" in either jurisdiction because it cannot meet the two requirements of having an agent for service of process and doing business in either jurisdiction. Therefore, Plaintiff

respectfully requests that Defendant's motion to vacate be denied. In the event, however, that Defendant makes additional factual submissions in an attempt to buttress its contentions, Plaintiff respectfully requests, in the alternative, that discovery be permitted into the grounds for Defendant's factual contentions, particularly in light of what Plaintiff considers to be the questionable nature of certain aspects of Defendant's submissions to date.

## ARGUMENT

### POINT I

### DEFENDANT HAS FAILED TO DEMONSTRATE THAT IT IS "FOUND" IN THE SOUTHERN DISTRICT OF NEW YORK

The determination of whether a defendant is "found" within the District, and thus immune from a Rule B attachment, presents "a two-pronged inquiry: First, whether (the respondent) can be found within the district in terms of jurisdiction, and second, if so, whether it can be found for service of process." Centauri Shipping Ltd. v. Western Bulk Carriers KS, 2007 WL 3025706 (S.D.N.Y. 2007) quoting Seawind Compania S.A. v. Crescent Line, Inc., 320 F.2d 580, 582 (2d Cir. 1963).

In this case, Defendant has failed to meet both requirements with respect to the Southern District of New York.

**A.    Defendant Has Not Established That It Has A Valid Agent for Service of Process in the Southern District of New York**

Defendant claims that it has two agents for service of process, ACTS and Med Brokerage, in the Southern District of New York.

**American Corporate Technical Services Inc. ("ACTS")**

Defendant's assertions with respect to ACTS are questionable on a number of grounds, beginning with the documentary evidence submitted by Defendant. In support of its claim that it designated ACTS as it agent for service of process, Defendant has attached, to the Affirmation of its counsel, what purports to be correspondence from ACTS to the "State of New York, Office of the Attorney General", at offices in Albany and Manhattan, enclosing a "Form U-2 Uniform Consent to Service of Process". *See Affirmation of Kirk M. Lyons In Support of Motion to Vacate Attachment,* dated January 23, 2008, at Ex. E (hereinafter *"Lyons Aff."*).

The effectiveness of this document is questionable on its face. First, the "RECEIVED" stamps on the document indicate that it was received by the Attorney General's "INVESTMENT PROTECTION" office and the "MANAGING ATTNY'S OFC."; no evidence is presented by Defendant that the Form U-2 was processed or accepted by the New York Division of Corporations.

Second, next to the address for the Manhattan office of the Attorney General, at the lower left corner of the letter, a notation of "NO RECORD" has been written. No explanation is offered regarding this notation, but it could indicate that no active record was found by the Attorney General's office for Defendant or for ACTS. On its face, this notation calls into question the legal effectiveness of the submission by ACTS of the Form U-2.

Third, as noted by undersigned counsel at the hearing, on the Form U-2 itself, it is not clear – at least from the copy served by Defendant's counsel – whether, in

- 4 -

fact, Defendant designated ACTS as its agent for service of process for the State of New York specifically, as required on the second page of the form.

Fourth, no affidavit testimony has been submitted by either Defendant or ACTS in support of Defendant's claim to have appointed ACTS as its agent for service of process. While we do not question, in any respect, the good faith of Defendant's counsel in putting this document before the Court, we would have expected to see affidavit testimony from either Defendant or ACTS, the two parties with direct knowledge of the alleged appointment, given the significance of this issue.

Even if one accepts the unsubstantiated *bona fides* of the Form U-2 attached as Exhibit E to the Lyons Affirmation, ACTS is an <u>inactive</u> corporation, and as such, it is not authorized to do business in the State of New York. *See Lyons Aff.* at Ex. G. Defendant provides no evidence whatsoever regarding ACTS' current operational status which, in view of its inactive status, is certainly open to reasonable question.

It is also significant that while ACTS' letterhead lists its office at 25 Main Street, Hastings-On-Hudson and is signed by Peter D. Wolf as its President, the Division of Corporations entry for ACTS lists Mr. Wolf as ACTS' own agent for service of process, but lists Mr. Wolf's address as 36 Main Street, Hastings-On-Hudson, rather than 25 Main Street. <u>*Compare*</u> *Lyons Aff. Ex. E* <u>*and*</u> *Ex. G.*

In the one, and only one, example cited by Defendant in which ACTS has supposedly accepted service of process on behalf of Defendant, the evidence is ambiguous. Exhibit F to the Lyons Affirmation is an Affidavit of Service in <u>Dicalite Armenia, Inc. v. Progress Bulk Carriers, Ltd.,</u> S.D.N.Y. 07-CV-8660. The Affidavit of

Service indicates that service was accepted at the "Law Offices of Peter D. Wolf", which had apparently moved from 36 Main Street (the address given for Mr. Wolf on ACTS' registration record) to 25 Main Street, the same location as ACTS. The Affidavit does not indicate that service was accepted at the offices of Defendant's supposed designated agent, ACTS, but rather at the Law Offices of Mr. Wolf. <u>See</u> *Lyons Aff.* at Ex. F. As such, this singular example is unpersuasive.

## Med Brokerage and Management, Corp.

Defendant has submitted the Affirmation of Mr. Ibrahim Mazman, who identifies himself as the President of Med Brokerage and Management, Corp. *Affirmation of Ibrahim Mazman in Support of Motion to Vacate Attachment*, dated January 22, 2008, at ¶1 (hereinafter "*Mazman Aff.* ").

Mr. Mazman affirms, under oath, that Med Brokerage maintains offices at 29 Continental Place in Glen Cove, Long Island and at 29 Broadway in Manhattan. *Mazman Aff.* at ¶2. Interestingly, Mr. Mazman's Affirmation does <u>not</u> say that employees of Med Brokerage report to work at the office on 29 Broadway, or, for that matter, that anyone employed by Med Brokerage is regularly available to accept service of process on behalf of Defendant at that location.

In support of his assertion that Med Brokerage maintains an office at 29 Broadway in this District, Mr. Mazman attaches, as Exhibit A to his Affirmation, what appears to be a current print-out from the New York State Division of Corporations for Med Brokerage.

The print-out submitted by Mr. Mazman identifies 29 Broadway, Suite 1602, as the address to which the New York Department of State will mail process if accepted on behalf of Med Brokerage, as the address of Mr Mazman, who is listed as "Chairman or Chief Executive Officer" of Med Brokerage, and as the "Principal Executive Office" for Med Brokerage. *Mazman Aff.* at Ex. A.[1]

At the hearing in this matter, undersigned counsel questioned whether Med Brokerage still maintained offices at 29 Broadway.   In response to this Court's inquiry, counsel for PBC said he could not indicate, one way or the other, whether Mr. Mazman's assertion of a current office was correct.

Along with this Memorandum of Law, Plaintiff submits the Affirmation of Simon Harter, Esq. In Opposition to Defendant, Progress Bulk Carriers, Ltd.'s, Motion to Vacate the Rule B Maritime Attachment (hereinafter "*Harter Aff.*").   As described in the Harter Affirmation, immediately following the hearing in this matter, undersigned counsel and his associate, Gerald Weathers, proceeded directly to 29 Broadway in an attempt to ascertain whether Med Brokerage was present at that address.  *See Harter Aff.* at ¶9.

The Harter Affirmation relates that the directory in the building lobby contains a listing for Med Brokerage as being in Suite 1707.[2]  *Id*.  The entrance door to

---

[1]   The Division of Corporations print-out for Med Brokerage does not contain any indication of Med Brokerage's office at 29 Continental Place in Glen Cove. *Compare Mazman Aff.* at ¶ 2 *and Mazman Aff.* at Ex. A.

[2]   By contrast, the Division of Corporations print-out for Med Brokerage lists the office as being in Suite 1602. *See Mazman Aff.* at Ex. A.

Suite 1707 bears two plaques; one for Med Brokerage and one for Ali C. Kurtmer, who was identified on his plaque as a Certified Public Accountant.  No one answered a knock on the door and accumulated mail was visible in the mail slot in the door.  *Id*. at ¶10.

Undersigned counsel then proceeded to enter the office of Jacques Pierot & Sons, Inc., known to undersigned counsel as ship brokers, which is located in Suite 1700, the suite next door to Suite 1707, the suite allegedly occupied by Med Brokerage. Upon entering the offices of Jacques Pierot, undersigned counsel spoke with an individual who identified himself as "Daniel".  Daniel stated that the only other tenants on the floor were the accountant (Mr. Kurtmer) and a law firm in the suite on the opposite side of Suite 1707.  *Id*. at ¶11.

Undersigned counsel then entered the offices of Cardillo & Corbett, the law firm whose offices are located in Suite 1710, on the opposite side of Suite 1707, and spoke to Tulio Prieto, Esq., a maritime lawyer with the firm who is known to undersigned counsel.  Mr. Prieto indicated that to his knowledge, the only person occupying Suite 1707 was the accountant.  *Id*. at ¶12.

Undersigned counsel then proceeded to the offices of the building managers, Jeffries Morris, Inc., on the 19th floor and spoke with the receptionist who identified herself as "Tia".  *Id*. at ¶13.  When asked whether Med Brokerage was a tenant in the building, Tia consulted a printed list of names, suite numbers and telephone numbers and stated to the undersigned that she found no listing for Med Brokerage as a current tenant.  When asked specifically about Suite 1707, she stated that the suite was

rented by Mr. Kurtmer and that it was possible that he had sublet the suite without the building's knowledge.  *Id*.

On departing the building, undersigned counsel asked a security guard stationed in the lobby, who preferred not to give his name, whether anyone from Med Brokerage visited the building.  He replied that Med Brokerage used to be in the building, but had left.  *Id*. at ¶14.

On January 28, 2008, undersigned counsel placed a call to Mr. Kurtmer, the accountant whose name is also listed on the door to Suite 1707.  *Id*. at ¶15. Mr. Kurtmer indicated initially that his main office was on Long Island and that he only occupied Suite 1707 at 29 Broadway on Thursdays. *Id*.  In response to specific questions about Med Brokerage, Mr. Kurtmer became very evasive and stated, when asked directly, that Med Brokerage shared Suite 1707 with him.  On further inquiry, he stated that Med Brokerage used the Suite as a "branch office" and that that was his "arrangement" with Med Brokerage.  When asked if, by "branch office", he meant a mail drop, he responded that he did not know what a mail drop was.  In response to a further question as to whether he actually saw Med Brokerage employees in the suite, he stated that he is only present in the suite on Thursdays and that he does not see anyone from Med Brokerage when he is there.  *Id*.

The Harter Affirmation also relates the findings of Plaintiff's further investigation today, in which a company profile for Med Brokerage was found on the website of Manta Publishing at www.manta.com. *Id*. at 16.  Pages from the Manta website are attached as Exhibit A to the Harter Affirmation. As noted in the Affirmation, the

- 9 -

Manta website states that it provides data and analysis on corporations and other business entities which it compiles from sources such as Dunn & Bradstreet, Newstex, Snapdata, Datamonitor and ICON. *Id*. at ¶17.

On the profile for Med Brokerage on the Manta website, Med Brokerage is shown as having its office at the Glen Cove address on Long Island. Under the section in the Med Brokerage profile entitled, "Location Type", the designation, "Single location" is stated. The profile also states that Med Brokerage is estimated to have three employees and that the three employees are at the single location. *Id*. at ¶18; Ex. *A* at p. 4.

On the basis of the foregoing, Plaintiff submits that contrary to the import of the Mazman Affirmation, Defendant has failed to establish that its managing agent, Med Brokerage, is regularly available to receive service of process for Defendant at 29 Broadway in Manhattan.[3]

### B.    Defendant Has Not Established That It Is Subject To Personal Jurisdiction in the Southern District of New York

Defendant, a foreign corporation, admits that it is not licensed, registered or authorized to do business in the State of New York. *See Lyons Aff.* at ¶13; *see also Affidavit Pursuant to Supplemental Rule B(1)(b)*, dated December 18, 2007, at ¶ 2(a), previously filed by Plaintiff (hereinafter *"Rule B Aff."*).

Had Defendant registered with the State of New York, there would be no disputing that it would be considered to be doing business in this District and therefore

---

[3]  Plaintiff does not seek to gratuitously question Mr. Mazman's credibility. In light of the questions raised at the hearing regarding the 29 Broadway issue, undersigned counsel has since asked counsel for Defendant twice to state his client's position on this issue, but no response has been received to either request. *See Harter Aff.* at ¶19.

subject to personal jurisdiction. *See* Centauri, *supra* at \*5; Iyalla v. TRT Holdings, Inc., 2005 WL 1765707 at \*3 (S.D.N.Y. 2005); Speed v. Pelican Resort N.V., 1992 WL 147646 at \*1 (S.D.N.Y. 1992). Instead, Defendant chose not to register, which would not only have constituted public notice that it was doing business, but would also have required Defendant to publicly identify a designated agent for service of process. Since Defendant did not do this, it must therefore establish to the satisfaction of this Court that it is subject to personal jurisdiction in order to meet the second requirement of being "found" in the District.

Defendant does not contend that it has any employees in the district, or that any of its employees occupy any offices in the district, or that it maintains any bank accounts in the district, owns any property in the district or has any ongoing presence of its own. Defendant points instead to the fact that it is listed, either in its own name, or in care of ACTS, on various Internet-based telephone directories. However, as indicated in Plaintiff's Rule B Affidavit, and the Lyons Affirmation submitted by Defendant, calls to the listed number are answered "ACTS". *See Rule B Aff.* at 2(b); *Lyons Aff.* at 11.

Plaintiff disputes that Defendant has a physical presence in this District. Although Defendant contends it has "an address" in this District, *see Lyons Aff.* at ¶12, that address is the same as the address for ACTS, and it is telling that Defendant makes no claim to have employees or other personnel at that office. Moreover, in another action against Defendant, Dicalite Armenia, Inc. v. Progress Bulk Carriers, Ltd., S.D.N.Y. 07-CV-8660, the plaintiff alleged that Defendant has a principal place of

business at 25 Main Street in Hastings-On-Hudson, but Defendant denied this allegation. _See_ 07-CV-8660, *Petition to Confirm Arbitration Award and to Enter Judgment* at ¶2 and *Answer to Petition to Confirm Arbitration Award* at ¶2.

Defendant contends further that it is "present" in the district by virtue of the actions of its managing general agent, Med Brokerage.[4]  Defendant claims, in the first instance, that on the basis of Med Brokerage's commercial activities on is behalf, it is subject to specific jurisdiction in this case because the charter party on which Plaintiff's underlying claims are based is a New York contract. In support of its position, Defendant points to the fact that the charter party states it is made in New York and calls for payment in New York. _See Mazman Aff._ at Ex. C, page 1 at line 1, page 2 at line 58.

Plaintiff disputes Defendant's characterization of the charter party as a "New York" contract for purposes of establishing specific jurisdiction. In <u>Agency Rent A Car System, Inc. v. Grand Rent A Car Corp.</u>, 98 F.3d 25, 29 (2d Cir. 1996), the Second Circuit enumerated a variety of factors to be considered in determining whether an out-of-state defendant transacts business in New York, including: "(i) whether the defendant has an on-going contractual relationship with a New York corporation * * *;

---

[4]  At the hearing, this Court asked counsel for Defendant whether Defendant would consent to personal jurisdiction in the event that, in the future Plaintiff sought to enforcement against the attached funds on the basis of a judgment confirming a London *(cont'd)* arbitration award in Plaintiff's favor.  Although counsel for Defendant, we believe, answered the Court's question in the affirmative, the determination of whether the Defendant is "found" for purposes of the attachment is measured as of the date of the filing of this action.  <u>Parkroad Corp. v. China Worldwide Shipping Co.</u>, 2005 U.S.Dist. LEXIS 11122, *3, 2005 A.M.C. 1839 (S.D.N.Y. 2005).

(ii) whether the contract was negotiated or executed in New York * * *, and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship * * *; (iii) what the choice-of-law clause is in any such contract * * *; and (iv) whether the contract requires [defendants] to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state * * *." *Id.* at 29. (citations omitted).  As the <u>Agency Rent A Car</u> court stated, no one factor is dispositive and the court must look at the totality of circumstances concerning the defendant's interactions with, and activities within, the state. *Id.*

In this case, while the charter party states it was made and concluded in New York, Defendant is incorrect in claiming that it calls for payment in New York. The portion of the printed form calling for payment in New York has been superseded by Rider Clause which provides banking details for Plaintiff in Russia as the place for payment under the charter party.  *See Mazman Aff.* at Ex. C., Rider Clauses, Clause 54, at p. 11.   In addition, the charter party is between Plaintiff, a Russian corporation, and Defendant, a Bahamian corporation, and concerns a Russian-flag vessel, the CHERKASSY.  *Id.* at page 1, lines 2, 12 and 3 respectively.  It calls for initial delivery of the vessel in China and redelivery at the end of the charter at any of a wide range of options throughout the world. *Id.* at p. 1, lines 18-19 and p. 2, lines 55-56 respectively.

Significantly, the charter party provides that it is governed by English law and that any disputes under the charter are subject to London arbitration.  *Id.* at Rider Clauses, Clause 48, at p. 9.

In a rather curious development, on the very next business day following this Court's hearing on this matter, Defendant issued an arbitration demand to Plaintiff in regard to what must now be a years-old claim.[5] *See Harter Aff.* at ¶21-22, Ex. B.

As Defendant's arbitration demand indicates, although the charter party clearly calls for arbitration in London under English law, and the demand is issued by Defendant's London solicitors, Defendant has elected to appoint a New York-qualified arbitrator, Mr. Charles Measter, who is a member of the Society of Maritime Arbitrators of New York, Inc.  While Plaintiff does not question Mr. Measter's qualifications, and although we are aware of occasions in the past when New York arbitrators have been appointed in London arbitration, the timing of this action is interesting when one considers that the question of whether the charter party is a "New York" contract is presently before this Court.

Plaintiffs submit, therefore, that the charter party is not a "New York" contract and will thus not support the exercise of specific jurisdiction over Defendant. However, even if the charter party is considered a "New York" contract, Defendant has failed to demonstrate that the actions of Med Brokerage are sufficient to subject Defendant to personal jurisdiction, either specifically or generally.

According to a case cited by Defendant, <u>Tese-Milner v. AD EFX Promotions, Inc.</u>, 2007 WL 1966866 (S.D.N.Y. 2007), in order for a foreign corporation, such as Defendant, to be subject to personal jurisdiction on the basis of the actions of an

---

[5]   In contrast, Plaintiff's claim was submitted to the sole arbitrator in London in November 2004. *See Harter Aff.* at ¶21.

agent in the district, the agent must act exclusively for the principal. "The agent must be primarily employed by the defendant and not engaged in similar services for other clients." *Id.* at *4, *quoting*, Wiwa v. Royal Dutch Petroleum, 226 F.3d 88, 95 (2d Cir. 2000).

The Mazman Affidavit claims that, "Substantially all of the activities involved in managing PBC's worldwide shipping business are performed exclusively by MED at our offices in New York and have been performed by MED since 1998." *Mazman Aff.* at ¶5. Setting aside the issue of credibility for the moment, what Mr. Mazman's Affidavit does not say, however, is that Med Brokerage acts exclusively for Defendant. Thus, even assuming Defendant proves to this Court's satisfaction that Med Brokerage is available to accept service of process at 29 Broadway in Manhattan, Defendant has failed to establish the degree of exclusivity on the part of its agent required by Wiwa and Tese-Milner in order for the actions of its agent to render Defendant subject to personal jurisdiction in the Southern District of New York.

## POINT II

### DEFENDANT HAS FAILED TO DEMONSTRATE THAT IT IS "FOUND" IN THE EASTERN DISTRICT OF NEW YORK

Defendant seeks, alternatively, to vacate Plaintiff's attachment on the basis of the "across the river" exception declared by the Second Circuit in Aqua Stoli v. Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 444-5 (2d Cir. 2006), inasmuch as Defendant's managing general agent, Med Brokerage, is located in Glen Cove, Long Island and because Med Broker's commercial activities on behalf of Defendant subject it to personal jurisdiction in the Eastern District.

- 15 -

Plaintiff disclosed in its Rule B Affidavit, submitted at the initiation of this proceeding, that it had located one reference on the Internet describing Med Brokerage as Defendant's managing general agent. *See Rule B Aff.* at ¶2(g). Having now been given the benefit of the Agency Agreement between Defendant and Med Brokerage, attached to the Mazman Affirmation at Exhibit B, Plaintiff concedes that pursuant to CPLR 311(1), Med Brokerage is authorized, as a matter of law, to accept service of process on behalf of Defendant at its office in the Eastern District of New York

In order to warrant vacatur of Plaintiff's Rule B attachment, however, Defendant must still prove that it is subject to personal jurisdiction in the Eastern District. Centauri Shipping Ltd. v. Western Bulk Carriers KS, 2007 WL 3025706 (S.D.N.Y. 2007) *quoting* Seawind Compania S.A. v. Crescent Line, Inc., 320 F.2d 580, 582 (2d Cir. 1963). This, Plaintiff contends, Defendant has not done.

## A. Defendant Has Not Established That It Is Subject To Personal Jurisdiction in the Eastern District of New York

For the reasons stated above with respect to the Southern District of New York, Plaintiff submits that Defendant has failed to establish that it is subject to personal jurisdiction on the basis of the commercial activities undertaken on its behalf by Med Brokerage. As noted above, Defendant has not proven that Med Brokerage acts exclusively for Defendant which, under authority cited by Defendant, is necessary for Med Brokerage's actions to subject Defendant to personal jurisdiction in the Eastern District of New York. Tese-Milner v. AD EFX Promotions, Inc., 2007 WL 1966866 at *4 (S.D.N.Y. 2007), *quoting*, Wiwa v. Royal Dutch Petroleum, 226 F.3d 88, 95 (2d Cir. 2000).

## POINT III

### IN THE EVENT DEFENDANT MAKES ADDITIONAL FACTUAL SUBMISSIONS, PLAINTIFF RESPECTFULLY REQUESTS, IN THE ALTERNATIVE, THAT IT BE PERMITTED LIMITED DISCOVERY INTO THE GROUNDS FOR DEFENDANT'S FACTUAL CONTENTIONS

Defendant took one full month to file its Motion to Vacate the Rule B attachment in this case. As Plaintiff argued at the hearing before this Court, Defendant's submissions actually raise a number of questions about its own assertions and, in other respects, fall short of the showing required to vacate Plaintiff's attachment.

This is not a case in which a defendant has registered to do business in the State of New York as a foreign corporation and has listed an agent for service of process on its publicly-available registration record. Instead, Defendant's actions here are more elusive and are clearly insufficient to put a potential attaching party, such as Plaintiff, on notice of Defendant's alleged "presence" in this District or "across the river".

Particularly in light of the serious questions Plaintiff has raised with respect to the credibility of Defendants' submissions, and in view of the one-sided presentation of evidence by Defendant, Plaintiff respectfully requests that in the event Defendant submits new factual evidence to this Court in its reply, Plaintiff be permitted, as a matter of fundamental fairness, to obtain limited discovery into the factual grounds underlying Defendant's claim to be "found" in both the Southern and Eastern Districts of New York.

- 17 -

## CONCLUSION

**FOR THE FOREGOING REASONS, PLAINTIFF, FAR EASTERN SHIPPING CO. RESPECTFULLY REQUESTS THAT AN ORDER BE ENTERED DENYING DEFENDANT, PROGRESS BULK CARRIERS, LTD'S, MOTION TO VACATE THE RULE B MARITIME ATTACHMENT OR, IN THE ALTERNATIVE, THAT AN ORDER BE ENTERED GRANTING LIMITED DISCOVERY OF THE EXTENT OF DEFENDANT'S JURISDICTIONAL CONTACTS WITH THE SOUTHERN AND EASTERN DISTRICT OF NEW YORK**

Dated:  January 29, 2008

Respectfully submitted,

**LAW OFFICES OF SIMON HARTER, ESQ.**
Attorneys for Plaintiff,
FAR EASTERN SHIPPING CO.

By:    _____
Simon Harter (SH-8540)
304 Park Avenue South – 11th Floor
New York, New York 10010
(212) 979-0250 - Phone
(212) 979-0251 – Fax

- 18 -

CERTIFICATE OF SERVICE

I, Simon Harter, an attorney duly admitted to practice before this Honorable Court, hereby affirm that on this 29th day of January, 2008, I served a true copy of the foregoing upon all counsel of record by Electronic Means, using the ECF system for the United States District Court for the Southern District of New York in accordance with Section 5 of this Court's Procedures for Electronic Case Filing dated March 6, 2003.

By: _____

Simon Harter (SH-8540)