UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
FAR EASTERN SHIPPING CO.,

                           Plaintiff,

        - against -

PROGRESS BULK CARRIERS, LTD.,

                         Defendant.
-------------------------------------------------------------------X

**ECF CASE**

07 Civ. 11375 (PAC)

### SUPPLEMENTAL AFFIRMATION OF IBRAHIM MAZMAN IN FURTHER SUPPORT OF MOTION TO VACATE ATTACHMENT

      IBRAHIM MAZMAN, affirms and states the following under the penalties of perjury under 28 USC § 1746:

      1.     I am President of Med Brokerage and Management, Corp. ("MED") and make this Supplemental Affirmation on behalf of and at the request of Progress Bulk Carriers, Ltd. ("PBC"), in further support of PBC's motion to vacate the attachment and in reply to Far Eastern Shipping Co.'s ("FESCO") opposition to PBC's motion.

      2.     In my previous Affirmation, dated January 22, 2008, I stated that MED maintains offices at 29 Continental Place in Glen Cove, NY 11542 and 29 Broadway in New York, NY 10006.

      3.     I have been informed by counsel for PBC that counsel for FESCO have visited MED's office at 29 Broadway and have raised doubts about whether the office there is truly MED's and whether it is an office at which MED could accept service of process.

      4.     Specifically, I have been advised that counsel for FESCO is concerned about the fact that the address listed in the NYS Department of State, Division of Corporations print-out dated January 18, 2008 (which was annexed as Exhibit A to my January 22, 2008,

Affirmation), is 29 Broadway, Suite 1602, while MED's actual address in Manhattan is 29 Broadway, Suite 1707.

5.      I have also been told that counsel for FESCO is concerned about whether any of MED's employees work out of, or regularly visit, MED's Manhattan office, and about the nature of MED's Manhattan office generally.

6.      From 1998 to May 2002, MED's principal place of business and only office was located in Manhattan at 29 Broadway, Suite 1602.

7.      In May of 2002, MED opened a new office in Glen Cove, New York and re-located all of its employees and operations to the Glen Cove office.

8.      Beginning in January of 2006, however, MED decided to again establish a presence in Manhattan at 29 Broadway.  This decision was made chiefly for marketing purposes, as it was desirable to be able to advertise a Manhattan address as well as maintain an opportunity for arranging meetings with clients at a Manhattan location.

9.      Thus, MED entered into an arrangement with Ali C. Kurtmer, MED's accountant of long standing, who leased an office located at 29 Broadway, Suite 1707.

10.      Under the arrangement between Mr. Kurtmer and MED, MED is permitted to use the address and a portion of the office space so that MED can maintain a presence in Manhattan.

11.      As a further part of the arrangement between Mr. Kurtmer and MED, Mr. Kurtmer agreed to post MED's sign next to the door to the office, and agreed to accept mail delivered to the office for MED.  (See photograph of the door to Suite 1707, a copy of which is annexed hereto as Exhibit A).  Additionally, MED arranged with the building management to list MED's name in the building's lobby.  (See letter dated April 6, 2006, a copy of which is

annexed hereto as Exhibit B, and see a photograph of the directory in the building lobby, a copy of which is annexed hereto as Exhibit C).

12.     When mail is delivered to Suite 1707 for MED, Mr. Kurtmer either notifies MED of such mail (so that MED employees can pick it up), forwards such mail to MED at its Glen Cove address, or personally delivers such mail to MED at its Glen Cove address.

13.     I estimate that MED employees travel to 29 Broadway, Suite 1707 approximately every other month to retrieve mail that has been delivered there for MED.

14.     Finally, MED has also reinstated its former telephone number in the Manhattan exchange, (212) 509-5080, which is associated with the 29 Broadway, Suite 1707, address, and which automatically forwards all calls received to MED's telephone lines at its Glen Cove location.  This telephone number and address is listed in a number of commercial and business directories and is readily discoverable.  (See print-out of a Google search for "Med Brokerage" and New York dated January 31, 2008, a copy of which is annexed hereto as Exhibit D).

15.     Thus, although MED does not have any employees working out of the Manhattan office on a regular basis, MED still considers itself to have a Manhattan address and a presence in Manhattan via the 29 Broadway address and the associated telephone line.

16.     In fact, MED's 29 Broadway, Suite 1707, address is listed on MED's marketing materials such as its letterhead.  (See MED's letterhead, a copy of which is annexed hereto as Exhibit E).

17.     Additionally, in my previous Affirmation dated January 22, 2008, I stated that PBC had entered into an agreement with MED providing that MED would act as PBC's worldwide managing agent.

18.     I further understand from counsel for PBC that FESCO is now raising questions about the nature and extent of MED's role as PBC's managing agent, and specifically, whether MED is primarily and exclusively employed by PBC in this role.

19.     In response to these concerns, I confirm that MED is the only managing agent employed by PBC, and MED has the power to bind PBC to contracts.

20.     FESCO was fully aware of MED's status as managing agent for PBC in that MED negotiated and signed the charter party for the M/V CHERKASSY which is the subject of FESCO's Rule B action.  (See page 5 of Exhibit C to my January 22, 2008, Affirmation, which shows that MED had signed the charter party on behalf of PBC).  The M/V CHERKASSY was just one of three vessels owned by FESCO which PBC chartered.  Numerous communications during all three of these charters, including all voyage instructions, were issued by MED on behalf of PBC.

21.     In October of 2002, upon taking possession of the M/V CHERKASSY (the charter of which is at the center of FESCO's lawsuit), at FESCO's request PBC specifically notified FESCO that MED was authorized to act as PBC's agent.  (See letter dated October 28, 2002, a copy of which is annexed hereto as Exhibit F).

22.     In addition to the charter parties above, the fixture recaps, charter party addendums, and an escrow agreement between FESCO and PBC, were all signed by MED as agents for PBC.  (See fixture recaps, addendum to charter party dated October 2002, and escrow agreement dated March 11, 2003, copies of which are annexed hereto as Exhibit G).

23.     The last FESCO vessel was re-delivered in January of 2005.  Thereafter and throughout 2005 and 2006, MED directly communicated with FESCO's legal department with regard to settlement of hire and accounting disputes relating to the charters, as well as a

cargo claim. (See e-mails dated November 24, 2005, March 6, 2006, and March 15, 2006, copies of which are annexed hereto as Exhibit H).

        24.    All of the foregoing events took place before December 2007 when FESCO filed its Rule B application. Thus, FESCO was fully aware that MED was PBC's managing agent at the time it filed its Rule B attachment action, and that PBC was therefore doing business in New York via MED and was present in New York via MED.

        The foregoing is true and correct to the best of my knowledge under the penalty of perjury.

Executed on:   February 1, 2008

<br>

                                             Ibrahim Mazman

## **CERTIFICATE OF SERVICE**

Jon Werner, an attorney duly admitted to practice before this Honorable Court, affirms on this 1st day of February 2008, I served true copies of the foregoing, by e-mail and ECF notice to:

LAW OFFICES OF SIMON HARTER, ESQ.
Attorneys for Plaintiff
304 Park Avenue South, 11th Floor
New York, NY 10010

Attn.:  Simon Harter, Esq.
        sharter@harterlaw.com


_____
Jon Werner

# EXHIBIT A



1707

**Ali C. Kurtmer**

Certified Public Accountant

**Med Brokerage
& Management Corp.**

# EXHIBIT B

# MED BROKERAGE & MANAGEMENT CORP.

April 6, 2006

Jeffries Morris
29 Broadway
New York, NY 10006

Attn. Ms. Doris Pereira:

Following to our telcon today, we are the former tenants (until June 2002), and we are back at Suite 1707, sharing space with Ali C. Kurtmer, CPA.  Our sign has been placed at the door of our office at #1707.

As per telcon, please kindly have the name of our company listed at the entrance to the building as per the letterhead above.

Thank you for your attention to this matter,

Sincerely,

Arif 'Asaf ' Ors

EXHIBIT C

| | |
|---|---:|
| **Margulyan, Eduard, Esq.** | |
| McNamara, Francis H. | 1412 |
| **Meade, Barry** | 1710 |
| **Med Brokerage & Management Corp.** | 2700 |
| | 1707 |
| Mele, Armand P., Esq. | 900 |
| Mellusi, Ralph J. | 2311 |
| | |
| **MerchantPlus LLC** | 3000 |
| **MicroMax** Computer Intelligence, Inc. | 1612 |
| Abarbanel, Samuel J. | |

# EXHIBIT D

Web    Images    Maps    News    Shopping    Gmail    more ▾                                      Sign in

## Google

| "med brokerage" new york | Search | Advanced Search
Preferences |

Web    Maps                                      Results **1** - **10** of about **527** for "**med brokerage**" **new york**. (**0.11** seconds)


©2007 Google          Map data ©2007 NAVTEQ™

### Med Brokerage & Management Corp
maps.google.com

29 Broadway
New York, NY 10006
(212) 509-5080
Get directions

More information »

### Untitled Document
**Med Brokerage** Boosts Business via Cohesive Environment. Overview Established in 1995
and based in Long Island, **New York**, **Med Brokerage** are managing agents ...
www.strategicdataworks.co.uk/MedBrokerage.html - 6k - Cached - Similar pages

### USDCData.com NYSD Foley Square 1:04-cv-00434 MacSteel ...
**New York**, NY 10018 (212) 279-8880 ATTORNEY TO BE NOTICED. Defendant. Progress
Bulk Carriers Ltd. Defendant. **Med Brokerage** & Management Corp. Cross Claimant ...
www.usdcdata.com/.../2004/cv00434.MacSteel_
International_USA_Corp._v._MV_Ain_Oussera_et_al/CS_1_0400434.html - 9k -
Cached - Similar pages

### D&B Company Profiles: Med Brokerage And Management - AlacraStore.com
Company: **Med Brokerage** And Management (Single location). Address: 29 Continental Pl
Glen Cove, **New York** USA 11542-2935. Telephone: 0001 - (516) 671-4454 ...
www.alacrastore.com/storecontent/dnb2/927779264 - 19k - Cached - Similar pages

### ASBA Mission Statement
**New York** NY 10004, 212-952-0390, 212-422-3067, Dry Cargo Broker. Jacq. Pierot Jr. &
Sons, Inc. ... **Med Brokerage** & Management Corp. 29 Continental Place ...
www.asba.org/members.cfm - 59k - Cached - Similar pages

### Alkahest Logistics - About Us
**Med Brokerage** & Management Corp., **New York**. Deniz Trading Corp., **New York**; Golden
Horn Managment Corp., **New York**; Progress Bulk Carriers, Ltd., Nassau, ...
alkahestlogistics.com/about_us - 6k - Cached - Similar pages

### [PDF] U.S. Corporate and Individual Donations to the President's Relief ...
File Format: PDF/Adobe Acrobat - View as HTML
UBL **New York**. 1289. Assoc. for the Development of Pakistan 18000.00. UBL **New
York** .... **Med Brokerage**. 500.00. 1529. Ishfaq H. Shah MD. 1000.00 ...
www.embassyofpakistanusa.org/forms/Donations.pdf - Similar pages

### [PDF] ABSTRACTS
File Format: PDF/Adobe Acrobat - View as HTML
children's mental health service agencies in two **New York** Communities. Burt's structural-
equivalence. criterion is employed to assess partial/complete data ...
www.insna.org/Connections-Web/Volume10/10(1)%20Pages%2022-40%20Abstracts.pdf -
Similar pages

### Forwarding, Maritime Advertising, Towage & Salvage, Ship Agents ...
**...** 9314.907 Tlx: 0657 **MED BROKERAGE** & MANAGEMENT
MEDITERRANEANCHARTERING **.....** **New** Mangalore(.in) **New** Orleans, LA (.us) Newport,
OR(.us) **New York** & **New ...**
www.best-maritime.info/catalogue_companies_list/company_source_37983_1.html - 89k -
Cached - Similar pages

### Contract Cases filed in the **New York** Southern District Court by ...
Justia Federal Filings - **New York** - **New York** Southern District Court - Peter K. **...** Plaintiff:
Progress Bulk Carriers Limited, **Med Brokerage** and Management **...**
dockets.justia.com/browse/state-**new_york**/court-nysdce/judge-Leisure/noscat-1/s-50 -
116k - Cached - Similar pages

### tag:"freighttransport" in **New York**, NY - YellowBot
customhouse customs broker freight transport transportation services. **Med Brokerage** &
Management Corp 29 Broadway **New York**, NY (212) 509-5080. 0.7 miles **...**
www.yellowbot.com/tags/freighttransport/**New**%20**York**,%20NY/page5.html - 48k -
Cached - Similar pages

**1** 2 3 4 5 6     **Next**

---

[ "med brokerage" new york ]    [ Search ]

Search within results | Language Tools | Search Tips | Dissatisfied? Help us improve | Try Google Experimental

---

©2008 Google - Google Home - Advertising Programs - Business Solutions - About Google

# EXHIBIT E

# MED BROKERAGE & MANAGEMENT CORP.

EXHIBIT F

# PROGRESS BULK CARRIERS LTD
## PARK LANE, P.O. BOX N-7768
## NASSAU, BAHAMAS

October 28, 2002

Messrs. Far Eastern Shipping Co.

Ref: MV Cherkassy / Progress Bulk Carriers Ltd
    CP dtd Oct 22, 2002

To Whom It May Concern,

This is to confirm that Messrs. Med Brokerage & Management Corp is duly authorized to act
as Agents for and on behalf of Progress Bulk Carriers Ltd.

Yours faithfully,
Progress Bulk Carriers Ltd.

H. Yesilkaya

EXHIBIT G

**ADDENDUM TO CHARTER PARTY MV CHEREMKHOVO / PROGRESS
BULK CARRIERS LTD DATED OCT 22, 2002**

It was agreed between Owners and Charterers that vessel is allowed to make
call to Syrian port on following conditions:

1. Charterers waiving listed hereunder off-hire claims:

   a) Off-hire due to boat drill            (mv Cheremkhovo)
   b) Off-hire at Damietta                  ( mv Cherkassy )
   c) Off-hire at Dardanelles               ( mv Cherkassy )
   d) Off-hire for steaming via Great Belt  ( mv Cherkassy )

2. Charterers paying lumpsum amount of USD 12,500.00 to Owners' bank
   account.

3. Charterers to pay additional war risk insurance premiums incurred due to
   vessel's call to Syria against presentation of the original invoices from
   underwriters, which are in line with Owners quotation of Jun 9, 2003.

OWNERS                          CHARTERERS

For and on behalf of

RE MV CHERKASSY / PROGRESS BULK CARRIERS - TENTATIVE

HEREBELOW RECAP OF FULLY CLEAN FIXTURE DD OCTOBER 21, 2001, NEW YORK:

MV CHERKASSY - EX " VASILIS KATSIKIS " LLOYD'S NO: 8300453

VSL IS BULK CARRIER, CLASS RS KM L3
GRT/NRT/DWT 16794/8843/23131 ON 10.21 SSW
LOA/BM 176.61/22.91 SUEZ/PANAMA NRT 13244/11762
GRAIN CAPA 29726; HO/HA 5/10; FLAG RUS;
DEPTH MOULDED-14.0M.
TPI 87.1; BUILT FEBR. 1984; BUNKER CAPA: 1516/263 MT
CONST: 350 MTS

HATCHES/HO L/B/H:
1 23.0/15.0/9.5 GR/B 389/3813 L/B:13.6/2x7.45  (M)
1 23.3/19.5/12.0 659/5646 19.5/2x8.95
3 14.7/19.5/12.0 6403/6475 19.5/2x8.95
4 24.7/19.5/12.0 6491/6361 19.5/2x9.95
5 14.7/12.0/12.0 6347/6319 19.5/2x8.95
CRANE CAPA: 4x25 MTS OUTREACH 24 M

SPEED/CONS:
LAD 12.6/24.5 MT IFO 180/RME 25 + 3.1 MT MDO/DMC
BAL 13.4 14.1 MT IFO 180/RME 25 + 3.1 MT MDO/DMC
IN PORT WITH CGO OPS: 1.0 MT IFO180 + 1.7 MT MDO
W/OUT CGO OPS: 1.0 MT IFO180 + 1.4 MT MDO
FOR MANOUVERS:
735 KG/HR MDO + 5% OA/SDMA OF IFO CONSUMED FOR ENSURING
OF WORKING ME WHILE STARTING/STOPPING, AND FOR EMERGENCY GEN

VSL HAS NO SHAFT GENERATOR INSTALLED.

FIXED TO
1) MESSRS PROGRESS BULK CARRIERS LTD BAHAMAS
   PARK LANE PO BOX 4-7768 NASSAU/BAHAMAS

FOR
2) TC PERIOD FOR 8/12 MOS +/- 15 DAYS CHOPT

3) DELY APS XINGANG OR EQUAL DISTANCE ANY DIRECTION OF TAICHUNG IN CHOPT

4) LAYCAN OCTOBER 25 / NOVEMBER 10
   (ETC/ETD VLADIVOSTOK 16-19/10/2002 ETA TAICHUNG 23-24/10/2002 ETCD/ETD
   27-28/10/2003)

5) HIRE:
   USD 4,450 /PDPR, INCLOT - FOR FIRST 50 DAYS
   USD 5,050/PDPR, INCLOT - FOR THE BALANCE

6) REDELY TO BE ON DLOSP/PASSING 1 SP ANYTIME DAY/NIGHT SHINC PICO:
   BOSTON/PARAMARIBO RANGE INCLUDING NCSA, CARIBS, USGULF OR VANCOUVER
   BC/BALBOA
   RANGE OR BALTIC/ALEXANDRIA RANGE INCLUDING BLACK SEA/ADRIATIC OR



PROVIDED
SAME

NOT INTERFERING WITH SHIPS CARGO OPERATIONS. FOR THE PURPOSE OF INTERNAL

FESCOS

ISM CODE PRODECURE, CHARTERERS HAVE TO ADVISE TO THE OWNERS THE AGENTS AND

SUPPLIERS FULL STYLE 3 (THREE) DAYS BEFORE BUNKERING/SUPPLY OF THE VESSEL FOR

CHARTERERS ACCOUNT.

8) TRADING EXCLUSION

WORLDWIDE TRADING WITHIN INSTITUTE WARRANTY LIMITS EXCLUDING CIS

PACIFIC

PORTS.

CUBA, N. KOREA, ISRAEL, SYRIA, ALBANIA, LEBANON, LIBYIA, CAMBODIA, ANGOLA,

TURKISH OCCUPIED CYPRUS, IRAQ, FORMER YUGOSLAVIA/ BUT VESSEL MAY TRADE THROUGH

CROATIA AND SLOVENIA/,SOMALIA, BANGLADESH, NIGERIA, LIBERIA, ZAIRE WAR OR WAR

LIKE ZONES AS DECLARED BY LONDON UNDERWRITERS.

ADDITIONAL WAR RISK INSURANCE PREMIUM, CREW BONUS TO BE APPLICABLE ONLY FOR

TRADING INTO PERSIAN GULF OR WAR ZONES,IF ANY, IF SO DECLARED BY LLOYD UNDERWRITERS IN LONDON, TO BE FOR CHARTERERS' ACCOUNT. THE RATE OF PREMIUM

NOT

TO EXCEED THOSE QUOTED BY LLOYD OF LONDON OR UNDERWRITERS.

9) CARGO EXCLUSIONS

LIVESTOCK, PITCH IN BULK, SULPHUR, SODDASH, FERO SILICON, NUCLEAR ISOTOPES,

H.B.I, CEMENT IN BULK, ALL KIND OF ACID ANY PRODUCTS ASSOCIATED WITH DIRECT

REDUCED IRON, ASPHALT, ARMS AND AMMONITIONS, SCRAP, MOTOR BLOCKS AND TURNINGS,

CREOSOTED GOODS, PETROLEUM OR ITS PRODUCTS, PETCOKE, CAKES, PYRITES.

CALCIUM

HYDROZIDE, NUCLEAR MATERALS, EXPELLERS, INFLAMMABLE AND DANGEROUS GOODS,

SALT

AND MAHOGANY LOGS STONE BLOCKS, BAGGED RICE, AND ANY OTHER HARMFUL, DANGEROUS

INJURIOUS, CONTRABAND OR UNLAWFUL CARGOES.

ALL CARGOERS TO AND LOADED/ CARRIED AND DISCHARGING ALWAYS IN ACCORDANCE

WITH

IMO REGULATION AND UP TO MASTER'S SATIFSACTION.



10) BS/L CLAUSE:

CONGENBILL(S) OR OTHER BIMCO RECOGNIZED/APPROVED BILL(S) OF LADING FORM TO
BE USED, BS/L TO BE SIGNED BY MASTER OR AGENTS IN ACCORDANCE WITH THE CHARTERERS
WRITING INSTRUCTIONS, BUT ALWAYS IN ACCORDANCE WITH MATES RECEIPTS. WHERE IT
IS
CUSTOMARY IN GRAIN/AGRIPRODUCT TRADING MATE'S RECEIPT TO BE ISSUED IN ACCORDANCE
WITH ELEVATORS FIGURE.

FESCO IS NOT TO BE SHOWN AS A CARRIER IN THE BS/L, NO LINER/THROUGH BS/L WILL BE
ISSUED DURING THE CURRENCY OF THIS CHARTER PARTY.

CHARTERERS TO INDEMNIFY OWNERS AGAINST ANY CLAIMS, OR DAMAGES ARISING FROM
BS/L
BEING NOT IN CONFORMITY WITH MATE'S RECEIPT.

AT DISCHARGING PORT, CARGO TO BE RELEASED AGAINST ORIGINAL OF RESPECTIVE BILLS
OF LADING. IN CASE ORIGINAL BILLS OF LADING ARE NOT ARRIVED IN TIME TO
DISCHARGING PORT, OWNERS AGREE TO DISCHARGE CARGO AS PER CHARTERERS' WRITTEN
INSTRUCTION AND AGAINST LETTER OF INDEMNITY AS PER OWNERS' P AND I CLUB WORDING
ISSUED/SIGNED BY CHARTERERS ON THEIR LETTERHEAD, BEFORE ACCEPTANCE OF SUCH
LOI
OWNERS SHOULD HAVE EVIDENCE THAT BS/L ISSUED IN ACCORDANCE WITH THIS CLUSE.

CHRTRS WILL KEEP OWNERS ADVISED ABOUT ACTUAL ARRIVAL OF ORIGINAL BILLS OF
LADING
TO DISCHARGING PORT, AND UPON ARRIVAL OF ORIGINAL BILLS OF LADING SAME DULY
ENDORSED BY RECEIVERS WILL BE EXCHANGED TO THE CHRTRS LOI.

11) SUBLETING CLAUSE
THE CHARTERERS SHALL HAVE THE OPTION OF SUBLETING THE VESSEL SUBJECT TO THE
OWNERS PRIOR APPROVAL WHICH SHALL NOT BE UNREASONABLY WITHHELD, UPON GIVING
NOTICE IN WRITTING TO THE OWNERS, BUT THE ORIGINAL CHARTERERS ALWAYS REMAIN
RESPONSIBLE TO THE OWNERS FOR DUE PERFORMANCE OF THE CHARTER PARTY AND
CONTRACTORS OF PERSON OF COMPANY TAKING SUCH SUBLETING SHALL BE



ANY
CONSEQUENCES ARISING FROM THE FACT THAT THE CREW HAS BEEN EMPLOYED IN
CLEANING.
OWNERS TO MAINTAIN CGO HOLD/SPACES AND INTERIOR OF HATCH
COVERS/COAMINGS
FREE OF
RUST AND SCALE FOR THE DURATION OF THIS C/P. IF FAILS HOLDS INSPECTION DUE
OWS
NOT COMPLY WITH ABOVE THAN OWS RECTIFY SAME AT THEIR TIME/EXPENSES AND
IF
THERE
IS ANY EXTRA CHARGES WHICH IS DIRECTLY RELATED FOR VSL FAILURE SUCH AS
DOCKAGE
/LAUNC BOAT, REINSPECTION FEE ETC TO BE FOR OWNERS ACCOUNT AND SAME TO
BE
SUBSTANTIATED BY VOUCHERS "

CL.53 - AS PER MAINTERMS

CL.65 - DELETE (AS NO GRABS ON BOARD)

ADD FOLLOWING CLAUSES:

CL.73
- CABLES/VICTUALING/ENTERTAINMENT: USD 800 PER MONTH PRO RATA IN CASH TO
MASTER
- CASH TO MASTER FOR EVERY PORT OF CALL: USD 100 PER EVERY PORT OF CALL IN
CASH
TO MASTER

PROTECTION CLAUSES TO BE INCLUDED IN CHARTER PARTY:
This Charter Party is subject to the following clauses all of which are also
to
be included in all bills of lading or waybills issued hereunder:

(a) CLAUSE PARAMOUNT
"This bill of lading shall have effect subject to the provisions of the
carriage
of Goods by Sea Act of the United States, the Hague Rules, or the
Hague-Visby
Rules, as applicable, or such other similar national legislation as may
mandatorily apply by virtue of origin or destination of the bills of lading,
which shall be deemed to be incorporated herein and nothing herein contained
shall be deemed a surrender by the carrier of any of its rights or
immunities or
an increase of any of its responsibilities or liabilities under said
applicable
Act. If any term of this bill of lading be repugnant to said applicable Act
to
any extent, such term shall be void to that extent, but no further."

(b) BOTH-TO-BLAME COLLISION CLAUSE
"If the ship comes into collision with another ship as a result of the
negligence of the other ship and any act, neglect or default of the master,
mariner, pilot or the servants of the carrier in the navigation or in the
management of the ship, the owners of the goods carried hereunder will
indemnify
the carrier against all loss or liability to the other or non-carrying ship
or
her owners insofar as such loss or liability represents loss of, or damage
to,
or any claim whatsoever of the owners of said goods, paid or payable by the
other or non-carrying ship or her owners to the owners of said goods and set



Oct 24 02 03:04p      SB                                        425 382 3242        p.7
24.Oct. 2002 10:55'     FESCO MANAGEMENT LTD                    No.3098   P. 7
                        FESCO CHARTERING DEP

off, recouped or recovered by the other or non-carrying ship or her owners as
part of their claim against the carrying ship or carrier.
The foregoing provisions shall also apply where the owners, operators or those
in charge of any ships or objects other than, or in addition to, the colliding
ships or objects are at fault in respect to a collision or contact."

(c) NEW JASON CLAUSE
"In the event of accident, danger, damage or disaster before or after the
commencement of the voyage resulting from any cause whatsoever, whether due to
negligence or not, for which, or for the consequences of which, the carrier is
not responsible, by statute, contract, or otherwise, the goods, shippers,
consignees, or owners of the goods shall contribute with the carrier in general
average to the payment of any sacrifices, losses, or expenses of a general
verage nature that may be made or incurred, and shall pay salvage and special
charges incurred in respect of the goods. If a salving ship is owned or operated
by the carrier, salvage shall be paid for as fully as if salving ship or ships
belonged to strangers. Such deposit as the carrier or his agents may deem
sufficient to cover the estimated contribution of the goods and any salvage and
special charges thereon shall, if required, be made by the goods, shippers,
consignees or owners of the goods to the carrier before delivery."

END RECAP+++


TKS + B. RGDS/V. CHABROV


*Med Brokerage & Management Corp.*
*For and on behalf of Progress Bulk Carr*
*As Agents Only*

Uct 24 02 03:04p          SD                    425 392 5242          p.8
    24 Oct 2002 10:56     FESCO MANAGEMENT LTD            No.3099  Ip. 8
                          FESCO CHARTERING DEP



Рабочее письмо электронная почта (e-mail)          Тема:  MV CHEREMKHOVO ACCT PROGRESS
                                                          RECAP OF FIXTURE

ATT: VLADISLAV

RE: MV CHEREMKHOVO ACCT PROGRESS RECAP OF FIXTURE

HEREBELOW RECAP OF FULLY CLEAN FIXTURE DD OCTOBER 22, 2002, NEW YORK:

MV CHEREMKHOVO - EX THALASSINI AXIA
GRT/NRT/DWT  16794/8843/23181 ON  10.20 SSW
LOA/BM  176.60/ 22.86 SUEZ/PANAMA NRT 13244/11762
GRAIN/BALE CAPA 29727/29131; HO/HA  5/1D; FLAG  Rus
BUILT 1984 YEAR
INMARSAT MINI-M 762459716-TEL, 762459718-FAX
INMARSAT-C 427320283 (TLX)

CALL SIGN UHWZ: TFI 87.6

SPEED/CONS:
LAD 12.6/24.5 MT IFO 180/RME 25 + 3.1 MT MDO/DMC
BAL 13.4 24.5 MT IFO 180/RME 25 + 3.1 MT MDO/DMC
IN PORT WITH CGO OPS: 1.0 MT IFO180 + 2.7 MT MDO
W/OUT CGO OPS: 1.0 MT IFO180 + 1.4 MT MDO
FOR MANOUVERS:
735 KG/HR MDO + 5% GAS/DMA OF IFO CONSUMED FOR ENSURING
OF WORKING ME WHILE STARTING/STOPPING, AND FOR EMERGENCY GEN

MV CHEREMKHOVO/ CHELYABINSK TYPE
LLOYD'S NO: 8306541
HO L/B/H(M)      G/B CAPA (CBM)    HA L/B (M)
1 23.0/15.0/9.5     3891/3813      13.6/2x7.45
2 25.3/19.5/12.0    6595/6463      19.5/2x8.95
3 24.7/19.5/12.0    6403/6275      19.5/2x8.95
4 24.7/19.5/12.0    6491/6361      19.5/2x8.96
5 24.7/12.0/12.0    6347/6219      19.5/2x8.95
ALL HOLDS HV CENTRAL BULKHEAD 1.56M WIDE AND 4 M DEEP FM DECK

TOPTANK STRENGTH- MT/M2
   HOLD 1/2/4 - 12.25
      3   - 13.20
      5   - 15.65
   DECK: - 2.7
HATCHCOVER: - 1.75

CRANE CAPA: 4x25 M° OUREACH 24 M

CLASSIFICATION SOCIETY: RUSSIAN REGISTER

CLASS: RS KM L3

- vsl is fully ITF'N AUSTR.HOLD LADDER fitted
- vsl is CO2 fitted in holds

FIXED TO
1) MESSRS PROGRESS BULK CARRIERS LTD BAHAMAS
   PARK LANE PO BOX 4-7768 NASSAU/BAHAMAS



FOR
2) TC PERIOD FOR 8/12 MOS +/- 15 DAYS IN CHOPT

3) DELIVERY 72 HRS AFTER HER SAILING FROM TIANJIN AS PER CHTRS ORDER

4) LAY/CAN NOVEMBER 15-25, 2002

5) HIRE:
USD 4,550 PDPR IOT FOR THE FIRST 50 DAYS IN HIRE
USD 5,050 PDPR IOT FOR THE BALANCE UPTO 6 (SIX) MONTHS ON HIRE
USD 5,150 PDPR IOT FOR THE NEXT 2 (TWO) MONTHS ON HIRE IN EXCESS OF 6
MONTHS
USD 5,250 PDPR IOT FOR THE NEXT 2 (TWO) MONTHS ON HIRE IN EXCESS OF 8
MONTHS
USD 5,350 PDPR FOR THE BALANCE ON HIRE UPTO 12 MONTHS

6) REDELY TO BE ON DLOSP/PASSING 1 SP ANYTIME DAY/NIGHT SHINC PICO:
BOSTON/PARAMARIBO RANGE INCLUDING NCSA, CARIBS, USGULF OR VANCOUVER
BC/BALBOA
RANGE OR BALTIC/ALEXANDRIA RANGE INCLUDING BLACK SEA/ADRIATIC OR
SINGAPORE/JAPAN
RANGE INCLUDING SOUTH KOREA, PHILIPPINES

7) BUNKER CLAUSE:
CHARTERERS TO REDELIVER WITH ABOUT THE SAME QUANTITIES AS ACTUALLY ON
BOARD
ON
DELIVERY. CHRS TO TAKE OVER AND PAY WITH FIRST HIRE VALUE OF BUNKERS AND
CHRS TO
HAVE THE RIGHT TO DEDUCT ESTIMATED BUNKER VALUE ON REDELY FROM LAST
SUFFICIENT
HIRE PAYMENT/S. BUNKER PRICES FOR DELIVERY AND REDELIVERY TO BE THE SAME
BOTH
ENDS AND BASED ON SINGAPORE PRICES OF PLATTS OLIGRAM ON DAY OF DELIVERY
OR
CLOSEST REPORTING DAY. CHARTS OPTION TO BUNKER PRIOR TO DELIVERY
PROVIDED
SAME
NOT INTERFERING WITHCHARTS CARGO OPERATIONS. FOR THE PRUPOSE OF
INTERNAL
FESCO'S
ISM CODE PRODECURE, CHARTERERS HAVE TO ADVISE TO THE OWNERS THE AGENTS
AND
SUPPLIERS FULL STYLE 3 (THREE) DAYS BEFORE BUNKERING/SUPPLY OF THE VESSEL
FOR
CHARTERERS ACCOUNT.

8) TRADING EXLUSION
WORLDWIDE TRADING WITHIN INSTITUTE WARRANTY LIMITS EXCLUDING CIS
PACIFIC
PORTS,
CUBA, N. KOREA, ISRAEL, SYRIA, ALBANIA, LEBANON, LIBYIA, CAMBODIA, ANGOLA,
TURKISH OCCUPIED CYPRUS, IRAQ, FORMER YUGOSLAVIA/ BUT VESSEL MAY TRADE
THROUGH
CROATIA AND SLOVENIA/SOMALIA, BANGLADESH, NIGERIA, LIBERIA, ZAIRE WAR OR
WAR
LIKE ZONES AS DECLARED BY LONDON UNDERWRITERS.
ADDITIONAL WAR RISK INSURANCE PREMIUM, CREW BONUS TO BE APPLICABLE
ONLY FOR
TRADING INTO PERSIAN GULF OR WAR ZONES,IF ANY, IF SO DECLARED BY LLOYD
UNDERWRITERS IN LONDON, TO BE FOR CHARTERERS' ACCOUNT. THE RATE OF
PREMIUM
NOT



TO EXCEED THOSE QUOTED BY LLOYD OF LONDON OR UNDERWRITERS,

9) CARGO EXCLUSIONS
LIVESTOCK, PITCH IN BULK, SULPHUR, SODDASH, FERO SILICON, NUCLEAR ISOTOPES,
H.B.I. CEMENT IN BULK, ALL KIND OF ACID ANY PRODUCTS ASSOCIATED WITH
DIRECT
REDUCED IRON, ASPHALT, ARMS AND AMMONITIONS, SCRAP, MOTOR BLOCKS AND
TURNINGS,
CREOSOTED GOODS, PETROLEUM OR ITS PRODUCTS, FETCOKE, CAKES, PYRITES,
CALCIUM
HYDROZIDE, NUCLEAR MATERIALS, EXPELLERS, INFLAMMABLE AND DANGEROUS
GOODS,
SALT
AND MAHOGANY LOGS STONE BLOCKS, BAGGED RICE, AND ANY OTHER HARMFUL,
DANGEROUS
,INJURIOUS, CONTRABAND OR UNLAWFUL CARGOES.
ALL CARGOERS TO AND LOADED/CARRIED AND DISCHARGING ALWAYS IN
ACCORDANCE
WITH
IMO REGULATION AND UP TO MASTER'S SATISFACTION.
CHRTRS CAN CARRY AMMONIUM NITRATE OF FERTILISER GRADE ONLY PROVIDED
ALWAYS
EXCLUDING HOLD NR. 5 AND NOT FROM/TO RUSSIAN PORTS.

HOWEVER CHRTRS CAN CARRY MAXIMUM 4 CAGROES DURING DURATION OF C/P:
CLINKER, SCRAP EX MB&T, SULPHUR, PETCOKE (GREEN PETCOKE EXCLUDED) WITH
TEMP
LESS
55 DEG CELSIUS PRIOR LOADING, SALT.
FOR SALT/SULPHUR - LIMEWASHING TO BE FOR CHARTERERS' TIME AND EXPENSES.
FOR SCRAP SOFT LOADING CL TO BE APPLIED.

10) BS/L CLAUSE:

CONGENBILL(S) OR OTHER BIMCO RECOGNIZED/APPROVED BILL(S) OF LADING FORM
TO
BE USED. BS/L TO BE SIGNED BY MASTER OR AGENTS IN ACCORDANCE WITH THE
CHARTERERS
WRITING INSTRUCTIONS, BUT ALWAYS IN ACCORDANCE WITH MATES RECEIPTS.
WHERE IT
IS
CUSTOMARY IN GRAIN/AGRIPRODUCT TRADING MATE'S RECEIPT TO BE ISSUED IN
ACCORDANCE
WITH ELEVATORS FIGURE.

FESCO IS NOT TO BE SHOWN AS A CARRIER IN THE BS/L. NO LINER/THROUGH BS/L.
WILL BE
ISSUED DURING THE CURRENCY OF THIS CHARTER PARTY.

CHARTERERS TO INDEMNIFY OWNERS AGAINST ANY CLAIMS, OR DAMAGES ARISING
FROM
BS/L
BEING NOT IN CONFORMITY WITH MATE'S RECEIPT.

AT DISCHARGING PORT, CARGO TO BE RELEASED AGAINST ORIGINAL OF RESPECTIVE
BILLS
OF LADING. IN CASE ORIGINAL BILLS OF LADING ARE NOT ARRIVED IN TIME TO
DISCHARGING PORT, OWNERS AGREE TO DISCHARGE CARGO AS PER CHARTERERS'
WRITTEN
INSTRUCTION AND AGAINST LETTER OF INDEMNITY AS PER OWNERS' P AND I CLUB
WORDING
ISSUED/SIGNED BY CHARTERERS ON THEIR LETTERHEAD. BEFORE ACCEPTANCE OF
SUCH

Oct 24 02 03:05p          SB                                    425 392 5242      p.11
     24.Oct. 2002 11:04'      FESCO MANAGEMENT LTD      .:          'No.3098  'P. 11
                            FESCO CHARTERING DEP

LOI
OWNERS SHOULD HAVE EVIDENCE THAT BS/L ISSUED IN ACCORDANCE WITH THIS
CLUSE.

CHRTRS WILL KEEP OWNERS ADVISED ABOUT ACTUAL ARRIVAL OF ORIGINAL BILLS
OF
LADING
TO DISCHARGING PORT, AND UPON ARRIVAL OF ORIGINAL BILLS OF LADING SAME
DULY
ENDORSED BY RECEIVERS WILL BE EXCHANGED TO THE CHRTRS LOI.

11) SUBLETING CLAUSE
THE CHARTERERS SHALL HAVE THE OPTION OF SUBLETING THE VESSEL SUBJECT TO
THE
OWNERS PRIOR APPROVAL WHICH SHALL NOT BE UNREASONABLY WITHHELD, UPON
GIVING
NOTICE IN WRITTING TO THE OWNERS, BUT THE ORIGINAL CHARTERERS ALWAYS
REMAIN
RESPONSIBLE TO THE OWNERS FOR DUE PERFORMANCE OF THE CHARTER PARTY
AND
CONTRACTORS OF PERSON OF COMPANY TAKING SUCH SUBLETING SHALL BE
DEEMED
CONTRACTORS OF THE CHARTERERS FOR ALL THE PURPOSES OF THIS CHARTER
PARTY.
ACCEPTANCE OF DELIVERY BY CHARTERERS SHALL NOT CONSTITUTE ANY WAIVER
OF
CHARTERERS' RIGHTS HEREUNDER.

12) FUMIGATION CLAUSE
CHOFT FUMIGATE CGO IN PORT WITH ALL COSTS OF SAME TO BE FOR CHRTRS
ACCOUNT
AND
FUMI TO BE PERFORMED IN CHRTRS TIME AND AT THEIR RISK. FUMIGATION IS NOT
TO
TAKE
PLACE WHILST CREW ARE ABOARD VSL, AND ALL COSTS ASHORE INCL ACCOMM,
MEALS,
TRANSPORT FOR CREW TO BE FOR CHRTRS ACCOUNT.

13) TTL COM 5 PCT INCL 1.25 PCT TO FESCO MANAGEMENT

14) OWISE AS PER NYPE 46 C/P FOR MV SETIF II DD AUGUST 01, 2001 NEW YORK
WITH
LOGICAL ALTERATIONS AS PER RECAP OF MAIN TERMS AND WITH FOLLOWING
AMENDMENTS
/
ALTERATIONS:

MAIN BODY:
==========

LN.56 -
INSERT "20 DAYS" INSTEAD OF "15 DAYS"

LN.57 -
INSERT "EVERY 15 DAYS" INSTEAD "EVERY 30 DAY"

LN.84 -
INSERT "USD 10 PER DAY" INSTEAD "USD 7"

LN.89 -
DELETE "ENGLISH" REPLACE FOR "RUSSIAN"
ADD AT THE END " AND EXTRACTS FROM LOGS, TRANSLATED IN ENGLISH"



RIDER CLAUSES:
==================

CL.31 -
AS PER C/P, ADD AT THE END OF CLAUSE: " UPON PROVIDING SUPPORTING
DOCUMENTS
OR
OWS WILL ARRANGE REIMBURSEMENT TO CHRTRS ACCOUNT AGAINST CHRTRS
CLAIM "

CL.35 -
AFTER 1984 ADD "AND 1996 AND ANY AMENDMENTS HERETO"

CL. 37 AS PER MAIN TERMS
AND ADD AFTER LINE 32 (SEE CLS 37): " CHRTS HAVE THE OPTION TO BRAKE IWL
AGAINST PAYING THE NET EXTRA INSURANCE PREMIUM ON HULL AND MACHINERY
AS PER
RECEIPTED INVOICE FROM OWNERS UNDERWRITERS SUBJECT TO OWNERS APPROVAL
BUT
OWNERS
APPROVAL NOT TO BE UNREASONABLY WITHHELD "

CL. 38 -
TO AD AFTER "CEMENT": "(HOWEVER CEMENT IN BAGS IS ALLOWED)"

"OWNERS TO DO THEIR UTMOST TO ARRANGE "SUPPLEMENT TO THE CERTIFICATE OF
FITNESS OF THE SHIP FOR CARRIAGE OF BULK CARGO" WITHIN FOUR MONTHS AFTER
THE
VESSELS HAS BEEN DELIVERED, OR IF THIS PERIOD IS EXPIRED, THAN LATEST ON
ARRIVAL
TO RUSSIAN PORT FOR LOADING AM NITRATE. CHRTRS AGREE TO CONTRIBUTE USD
2000
PAYABLE AS PER OWNERS' INSTRUCTIONS TO COVER THE EXPENSES FOR OBTAINING
"SUPPLEMENT TO THE CERTIFICATE OF FITNESS OF THE SHIP FOR CARRAGE OF BULK
CARGO"
FROM VSL'S CLASS".

CL.41 -
DELETE ITEM B)
ITEM C) DELET LAST SENTANCE INSTEAD INSERT: " SUBJECT MUTUALLY ACCEPTABLE
RATE
TO BE AGREED BETWEEN CHRTRS AND MASTER AND PROVIDED SUCH CREW
MEMBERS ARE ON
BOARD WITH THE NECESSARY CERTIFICATION AND QUALIFICATION TO UNDERTAKE
SUCH
WORK "

CL. 42 -
AS PER MAIN TERMS

CL. 45 -
AT THE END OF PARA 2) INSERT " MASTER ARRANGE THE SURVEY ON BEHALF AND
FOR
ACCOUNT OF CHRTRS ".
ADD AT THE END:
"In case of any and all damage(s) affecting the Vessel's seaworthiness
and/or
the safety of the crew and/or affecting the trading capabilities of the
Vessel,
the Charterers shall immediately arrange for repairs of such damage(s) at
their
expense and the Vessel is to remain on hire until such repairs are completed
and
if required passed by the Vessel's classification society."



Oct 24 02 03:06p    SB    425 392 5242    p.13
    24.Oct. 2002 11:07    FESCO MANAGEMENT LTD .    No.3098    P. 13
    FESCO CHARTERING DEP

CL.50 -
" CHRTRS HAVE AN OPTION TO REDELIVER THE VESSEL WITH UNCLEAN HOLDS AND PAYING
LUMPSUM AMOUNT OF $3,000.00 IN LIEU OF HOLDS CLEANING. UPON COMPLETION OF EACH
CARGO, IF REQUESTED BY CHARTERERS, VESSEL'S CREW TO CLEAN / PREPARE THE HOLDS IN
CHRTRS' TIME AND CHRTRS PAYING LUMPSUM AMOUNT OF USD 500.00 PER HOLD ACTUALLY
CLEANED. IF VSL FAILS HOLDS INSPECTION DUE TO RUST AND/OR RUST SCALES AND/OR
LOOSE OR PEELING PAINT SAME SHALL BE FOR OWNERS' ACCOUNT.
OWNERS/MASTER WILL ENDEAVOUR TO EFFECT SUCH CLEANING AS BEST AS POSSIBLE,
BUT
WITHOUT GARANTEE THAT THE CARGO HOLDS WILL BE SUFFICIENTLY CLEANED AND
ACCEPTED
ON ARRIVAL AT THE LOADING PORT AND THE OWNERS SHALL NOT BE RESPONSIBLE FOR
ANY
CONSEQUENCES ARISING FROM THE FACT THAT THE CREW HAS BEEN EMPLOYED IN CLEANING.
OWNERS TO MAINTAIN CGO HOLD/SPACES AND INTERIOR OF HATCH COVERS/COAMINGS
FREE OF
RUST AND SCALE FOR THE DURATION OF THIS C/P. IF FAILS HOLDS INSPECTION DUE OWS
NOT COMPLY WITH ABOVE THAN OWS RECTIFY SAME AT THEIR TIME/EXPENSES AND IF
THERE
IS ANY EXTRA CHARGES WHICH IS DIRECTLY RELATED FOR VSL FAILURE SUCH AS DOCKAGE
/LAUNC BOAT, REINSPECTION FEE ETC TO BE FOR OWNERS ACCOUNT AND SAME TO BE
SUBSTANTIATED BY VOUCHERS "

CL.53 - AS PER MAINTERMS

CL.65 - DELETE  (AS NO GRABS ON BOARD)

ADD FOLLOWING CLAUSES:

CL.73
- CABLES/VICTUALING/ENTERTAINMENT: USD 800 PER MONTH PRO RATA IN CASH TO MASTER
- CASH TO MASTER FOR EVERY PORT OF CALL: USD 100 PER EVERY PORT OF CALL IN CASH
TO MASTER

PROTECTION CLAUSES TO BE INCLUDED IN CHARTER PARTY:
This Charter Party is subject to the following clauses all of which are also to
be included in all bills of lading or waybills issued hereunder:

(a) CLAUSE PARAMOUNT
"This bill of lading shall have effect subject to the provisions of the carriage
of Goods by Sea Act of the United States, the Hague Rules, or the Hague-Visby
Rules, as applicable, or such other similar national legislation as may
mandatorily apply by virtue of origin or destination of the bills of lading,



24.Oct. 2002 11:09    FESCO MANAGEMENT LTD    No.3098    P. 14
FESCO CHARTERING DEP

which shall be deemed to be incorporated herein and nothing herein contained
shall be deemed a surrender by the carrier of any of its rights or
immunities or
an increase of any of its responsibilities or liabilities under said
applicable
Act. If any term of this bill of lading be repugnant to said applicable Act
to
any extent, such term shall be void to that extent, but no further."

(b) BOTH-TO-BLAME COLLISION CLAUSE
"If the ship comes into collision with another ship as a result of the
negligence of the other ship and any act, neglect or default of the master,
mariner, pilot or the servants of the carrier in the navigation or in the
management of the ship, the owners of the goods carried hereunder will
indemnify
the carrier against all loss or liability to the other or non-carrying ship
or
her owners insofar as such loss or liability represents loss of, or damage
to,
or any claim whatsoever of the owners of said goods, paid or payable by the
other or non-carrying ship or her owners to the owners of said goods and set
off, recouped or recovered by the other or non-carrying ship or her owners
as
part of their claim against the carrying ship or carrier.
The foregoing provisions shall also apply where the owners, operators or
those
in charge of any ships or objects other than, or in addition to, the
colliding
ships or objects are at fault in respect to a collision or contact."

(c) NEW JASON CLAUSE
"In the event of accident, danger, damage or disaster before or after the
commencement of the voyage resulting from any cause whatsoever, whether due
to
negligence or not, for which, or for the consequences of which, the carrier
is
not responsible, by statute, contract, or otherwise, the goods, shippers,
consignees, or owners of the goods shall contribute with the carrier in
general
average to the payment of any sacrifices, losses, or expenses of a general
verage nature that may be made or incurred, and shall pay salvage and
special
charges incurred in respect of the goods. If a salving ship is owned or
operated
by the carrier, salvage shall be paid for as fully as if salving ship or
ships
belonged to strangers. Such deposit as the carrier or his agents may deem
sufficient to cover the estimated contribution of the goods and any salvage
and
special charges thereon shall, if required, be made by the goods, shippers,
consignees or owners of the goods to the carrier before delivery."

END RECAP+++


TKS + B. RODS/V. CHABROV

Med Brokerage & Management
For and on behalf of Progress Bulk Carriers Ltd
As Agents Only

## ESCROW AGREEMENT

THIS ESCROW AGREEMENT ("Agreement") made and entered into as of the __11th__ day of March 2003, by and between FAR EASTERN SHIPPING CO., Vladivostok, ("Owner") and PROGRESS BULK CARRIERS, LTD. Bahamas ("Charterer").

### BASIS OF AGREEMENT

A.    Owner and Charterer are parties to a time charter party dated October 22, 2002 with respect to the vessel M/V Cheremkovo (the "Charter Party").

B.    Charterer wishes to order the MV Cheremkovo under the charter party to the port of Uusikaupunki to load a cargo (hereinafter "the port call").

C.    Pursuant to the Parties' agreement to allow the port call, the Parties have agreed to escrow funds to provide for payment by Charterer to Owner for any damage to the vessel's hull and machinery directly arising out of ice conditions in the port during the port call, i.e. during that time when the ship is on the way to the port, she is directly in the port and she departures the port. reasonable wear and tear to the vessel excepted.

D.    As part of the escrow arrangement, Charterer has agreed to deliver said escrow funds to Escrow Agent, who has agreed to hold the same in accordance with the terms of this Agreement.

NOW, THEREFORE, intending to be legally bound hereby and intending to incorporate the above recitals herein, the parties agree as follows:

1.    DETERMINATION OF DAMAGE ; JOINT INSTRUCTIONS TO ESCROW AGENT.    Upon completion of the said port call,  owners, at their option, may undertake investigations to determine if damage was incurred during the port call.  If damage of the nature described in paragraph C above has been incurred, Owners shall instruct a surveyor, acceptable to Charterers, to assess and quantify the damage. Charterers shall not unreasonably withhold approval with respect to the surveyor appointed by Owners.  However, if the parties cannot agree to instruction of a single surveyor, Owners and Charterers each shall instruct their own surveyor to participate in a joint survey.  The parties agree to be bound by the determination of the surveyor(s) with respect to existence and quantum of damage. The parties further agree to apply the funds held in escrow toward satisfaction of damage incurred due to the port call.  However, it is agreed that the escrow amount provides no limitation on damage that in fact was incurred.  If charterer's liability insurers/ P and I Club make payment on behalf of charterers, then the funds held in escrow shall be released to charterers accordingly.

2.    ESCROW FUND.  Upon signing of this Agreement, an amount of One Hundred Seventy Five Thousand Dollars ($175,000.00) of Charterer's funds (the "Escrow Amount") shall be delivered to the Escrow Agent, who shall hold the Escrow Amount in escrow in accordance with the terms and conditions of this Agreement.  Escrow Agent shall release the Escrow

Charterers' liability is to commence from the moment of pilotage commencement to the loading port/quay.

Amount as directed pursuant to a written authorization executed by both Charterer and Owner, and / or in accordance with this Agreement.

3.     CAPACITY OF ESCROW AGENT. Escrow Agent, upon receipt of the Escrow Amount, shall deposit the same into a federally insured institution. The account shall be non-interest-bearing and Charterer shall provide Escrow Agent with its taxpayer identification number.

4.     DUTIES. The duties of the Escrow Agent are only such as are herein specifically provided, being purely ministerial in nature, and Escrow Agent shall incur no liability whatsoever except for willful misconduct or gross negligence, so long as Escrow Agent has acted in good faith. Owner and Charterer hereby release Escrow Agent from any acts done or omitted to be done by Escrow Agent in good faith in the performance of Escrow Agent's duties hereunder. Escrow Agent shall be under no duty with respect to the Escrow Amount other than to follow faithfully the provisions of this Agreement. Escrow Agent shall not be required to defend any legal proceeding which may be instituted against Escrow Agent with respect to the subject matter of this Agreement unless requested to do so by Owner or Charterer and, further, unless indemnified to the satisfaction of Escrow Agent against the cost and expense of such defense. Escrow Agent shall not be required to institute legal proceedings of any kind.

5.     LIMITATION OF LIABILITY. Escrow agent assumes no liability under this Agreement, except that of stakeholder. If there is any dispute as to whether Escrow Agent is obligated to deliver the Escrow Amount, or as to whom any sum is to be delivered, Escrow Agent will not be obligated to make any delivery of the Escrow Amount, but in such event shall hold the Escrow Amount until receipt by Escrow Agent of an authorization in writing signed by all the persons having an interest in such dispute directing the disposition of the Escrow Amount, or in the absence of such authorization, Escrow Agent shall hold the Escrow Amount until the final determination of the rights of the parties in an appropriate proceeding. If such written authorization is not given, or proceedings for such determination are not commenced and diligently continued, Escrow Agent may, and shall upon the written demand of either Owner or Charterer, bring an appropriate action or proceeding for leave to pay the Escrow Amount to an appropriate court pending such determination. If such action becomes necessary or is demanded, the legal fees and costs incurred by Escrow Agent shall be shared jointly by Owner and Charterer. In making delivery of the Escrow Amount in the manner provided for in this Agreement, Escrow Agent shall have no further liability in the matter.

6.     OTHER IMPORTANT PROVISIONS.

a.     This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, administrators, successors and assigns.

b.     Governing Law. Any dispute arising out of this escrow agreement shall be arbitrated in, and governed by the laws of, the English Law, in accordance with the arbitration clause agreed to by the parties in the charter party for the MV Cheremkovo dated Oct. 22, 2002.

IN WITNESS WHEREOF, intending to be legally bound hereby, the parties have executed this Escrow Agreement as of the day and year first above written.

**CHARTERER:**

PROGRESS BULK CARRIERS LTD.
BAHAMAS

By: _____

MED BROKERAGE & MANAGEMENT
29 CONTINENTAL PLACE
GLEN COVE, NY 11542
(516) 671-4454

As agents for PbC

**OWNER:**

FAR EASTERN SHIPPING CO., Vladivostok

By: _____

EXHIBIT H

```
=====================================================================
Message Printed    on 1/29/200810:52:57  by KO      RefNum:KO1055073
From/To: ("Alen A. Gukasyan" <90112@90.fesco.ru>)
=====================================================================
```

From: "Alen A. Gukasyan" <90112@90.fesco.ru>
To: Konstantin Osypenko <medbrokerage@earthlink.net>
Subject: HA: MV Igarka / Progress
Date: Thu, 24 Nov 2005 10:25:17 +1000

Dear Mr. Osypenko,

Please be advised that I have received a confirmation from our Financial
Dept. that we have received USD 77 791,06.

Thank you for cooperation.

Best regards,

Alen Gukasyan
Lawyer
Legal Department
Far Eastern Shipping Company (FESCO)
Tel.: +7 (4232) 52-14-49, fax: +7 (4232) 52-14-50
www. fesco.ru


Konstantin Osypenko <medbrokerage@earthlink.net>

<medbrokerage@earthlink.net>
: Konstantin Osypenko <medbrokerage@earthlink.net>
23.11.2005 23:41







   (e-mail)





:
Konstantin Osypenko <medbrokerage@earthlink.net>

Message Continues...

MV Igarka / Progress

MED BROKERAGE & MANAGEMENT CORP.
29 CONTINENTAL PLACE
GLEN COVE, NY 11542
TEL: 516-671-4454  FAX: 516-671-4452  TLX: 49644700
EMAIL: MEDBROKERAGE@EARTHLINK.NET COMTEXT: A26UT475

REF : KO1054617
DATE: 11/23/2005

To: FESCO

Attn: Mr Gukasyan

Ref: MV Igarka / Progress

11/23/2005

Dear Mr Gukasyan,

Pleased to confirm that amount of USD 77,491.06 was remitted to Owners'
account today
with value date Nov 23, 2005. Please forward confirmation upon receipt of
funds.


Brgds/K. Osypenko
Med Brokerage
(as agents)


--------------- End of Message ---------------

```
Message Printed    on 1/29/200810:46:48  by KO       RefNum:KO1131031
From/To: ("Viktor V. Pomelov" <90001@90.fesco.ru>)
```
=====================================================================

From: "Viktor V. Pomelov" <90001@90.fesco.ru>
To: medbrokerage@earthlink.net
cc: "Tatyana Y. Fedotova" <TFedotova@internal.ru>
Subject: m/v "Cherkassy" - C/P dd 22.10.2002/ outstanding balance
Date: Mon, 6 Mar 2006 16:20:18 +1000

To: Progress Bulk Carriers Ltd.
c/o Med Brokerage and Management Corp.

                        WITHOUT PREJUDICE
Dear Sirs,

Re: m/v "Cherkassy" / C/P dd 22 October 2002 - outstanding balance due to
Fesco.

Please be advised that we would like to revert to our negotiations on the
aforesaid matter and refer to our fax messages of 09 February 2005; 04
July 2005 on which our correspondence was stopped.
Having duly thought over the Charterer's provisional final hire statement
we re-considered all the facts and materials and, unfortunatly, we can not
agree with the Charterer's amount of USD 15,666.35 proposed as final
balance due to Fesco.
We amended our final hire statement, which you will find attached below,
according to which outstanding amount due to Fesco is total USD 47,521.55.
Our position is based on the following:
1. We accept off-hire periods on which the vessel was put by the
Charterer's, total to 4,345659 days.
2. We can not accept off-hire for 2.8361111 days on which the vessel was
put for the alleged delay at Dardanelles on 08-10.12.2002. We ask
Charterer's to pay their attention to the facts, on which they were duly
and fully informed during the voyage. According to the logbook the delay
was induced since the vessel was forced to ride out a storm and then to
wait for permission to enter Dardanella.The entrance was closed for all
vessels by the Mehmetcik Traffic Control's prohibition because of the bad
weather conditions at that area. The entry permit was received by the
vessel only at 21.17 on 10.12.2002. Hence, there was no ground to put the
vessel off-hire.
3. We also included outstanding amounts for reimbursement of war risk
insurance call at Indonesia, Alexandria and Iran, which was amended.

Considering the above-said we would ask the Charterers to check their
position, taking into account Fesco's final hire statement and revert
promptly in order to settle the matter amicably without further delay.

Looking forward to hearing from you asap.



Best regards,

Victor Pomelov
Director,
FESCO Legal department
Tel.: +7(4232)52-10-56
Fax: +7(4232)52-14-50
e. mail: 90001@90.fesco.ru
www.fesco.ru
[A Mime Part ( - attachment; filename="Cherkassy 22.10.02 (final).pdf") was detected here]


           --------------- End of Message ---------------

```
Message Printed    on 1/29/200810:52:03  by KO       RefNum:KO1139232
From/To: ("Lyudmila A. Voropaeva" <90111@90.fesco.ru>)
======================================================================
```

```
From: "Lyudmila A. Voropaeva" <90111@90.fesco.ru>
To: Konstantin Osypenko <medbrokerage@earthlink.net>
cc: "Viktor V. Pomelov" <90001@90.fesco.ru>
Subject: HA: m/v 'Igarka'- at Abijan on 16 June, 2004. Your ref: KO107184
Date: Wed, 15 Mar 2006 14:52:51 +1000

To: Med Brokerage & Management Corp.
Attn: Mr. Konstantin Osypenko
Your ref: KO1131944

Konstantin/ Lyudmila

Subject: m/v " Igarka" - at Abijan on 16 June, 2004.
               Shortage of Cargo. Claim settled at US$ 22,961.65 plus
EUR 1,942.20.

Thank you for your message of 7 March, 2006.
Please be advised that we have checked again the documents and accounts
related with this matter.

1.  We confirm that the cargo receivers have erroneously indicated amount
of US$ 22,000 in the Act of Receipt & Release though bank slip of
01.06.2005 shows remittance of US$ 22.961.65 made by the owner. Therefore
we are compelled to agree that the charterer admits of US$ 11,000.

2.  As to the Customs Fine settled at the amount of EUR 1,942.20 we can
advise the following:
In the London Arbitration Decision (14/89) enclosed by you it is mentioned
of careless attitude to the cargo on the part of the vessel's crew meaning
the case of theft of microscope which was then found in the ship's
forecastle store. The court's decision was just in that case. But in our
case, on the contrary, we have irrefutable evidence that the fine imposed
for shortage of cargo occurred due to careless actions and omissions on
the part of the charterer's servants. Particularly stevedoring company
employed by the charterer for loading/ discharging at Saigon and Abijan.
In support of the aforesaid we enclose protest-letters of the Master of
the m/v "Igarka".  As you can see, both the Master and the crew, fulfilled
their duties carefully observing tally of the cargo and the quality of
loading/discharging.
Considering the above, we cannot admit your deny of liability for the
Customs Fine for the shortage of cargo.
Therefore we would ask you to confirm remittance of US$ 11,000 and EUR
971.00 to Fesco's bank account.

We look forward to hearing from you soon.

Kind regards

Lyudmila Voropaeva
Claims Section
Legal Department
Fesco
```

```
[A Mime Part ( - attachment; filename="Protest letter.pdf") was detected here]

        --------------- End of Message ---------------
```